IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

DAVID RAY GUNTER,                )
                                 )
            Plaintiff,           )
                                 )
       v.                        )          1:16CV262
                                 )
SOUTHERN HEALTH PARTNERS, INC., )
et al.,                          )
                                 )
            Defendants.          )

## <u>MEMORANDUM OPINION AND ORDER</u>

**OSTEEN, JR., District Judge**

This matter is before the court on a Motion to Dismiss filed by Defendants North Carolina Department of Health and Human Services and Rick Brajer[1] (collectively "Moving Defendants"). (Doc. 35.) Plaintiff filed a response in opposition (Docs. 47, 48), and Moving Defendants filed a reply (Doc. 49). This matter is now ripe for resolution, and for the reasons stated below, Moving Defendants' motion to dismiss will be granted.

---

[1] Effective January 13, 2017, Mandy K. Cohen, MD, MPH was appointed as the Secretary of the North Carolina Department of Health and Human Services. Secretary Cohen is the successor to former Secretary Rick Brajer. Pursuant to Fed. R. Civ. P. 25(d), Secretary Cohen is automatically substituted as a party defendant for all claims asserted against Rick Brajer in his official capacity as former Secretary of the North Carolina Department of Health and Human Services. (See Doc. 69.)

# I. <u>PROCEDURAL HISTORY</u>

Plaintiff commenced the present action in the Randolph County Superior Court Division of the State of North Carolina by filing a Complaint on November 25, 2015. (Doc. 23.) Plaintiff filed an Amended Complaint in this matter on March 3, 2016. (Doc. 26.) A Petition for Removal to this court was filed on April 1, 2016. (Doc. 1.) Defendants North Carolina Department of Health and Human Services ("DHHS") and the Secretary of DHHS ("the Secretary"), filed the present motion to dismiss on April 29, 2016. (Doc. 35.) Thereafter, Plaintiff filed a motion for leave to amend and to add a party defendant (Doc. 51), which this court granted (Doc. 56). However, in light of the limited nature of the amended complaint, this court ordered that the motion to dismiss filed by DHHS and the Secretary would be considered in response to the Second Amended Complaint (Doc. 57), but permitted the parties to request additional briefing. (Id.) DHHS and the Secretary filed a supplemental reply stating that the issues had been fully briefed and no additional briefing was needed. (Doc. 60.) On March 20, 2017, a hearing was held before this court on the motion to dismiss filed by DHHS and the Secretary. This matter is now ripe for adjudication.

- 2 -

## II.  BACKGROUND

Plaintiff was diagnosed with a heart defect as an infant.
(Second Amended Complaint ("Second Am. Compl.") (Doc. 57) ¶ 79.)
Plaintiff had surgeries and required substantial medical
attention throughout his life for his heart condition. (Id.
¶¶ 79-82.) Plaintiff's physicians prescribed medication to
maintain his heart health and circulatory system, including
Coumadin, an anticoagulant. (Id. ¶ 83.) The prescribed
medications are essential in maintaining Plaintiff's health.
(Id. ¶ 84.) Plaintiff must take regular doses of his
medications, including Coumadin, to maintain levels of the
medicine at a therapeutic level. (Id. ¶¶ 85-87.) Plaintiff took
his Coumadin dose at a set hour every day and did not suffer
serious complications from his heart condition provided he
faithfully observed his physicians' instructions. (Id. ¶ 88.)

On November 6, 2012, Plaintiff was arrested in Forsyth
County, North Carolina, on a charge for failure to appear in
Davie County, North Carolina, for a Driving While License
Revoked. (Id. ¶ 89.) Plaintiff remained in Forsyth County that
night. (Id.) When Plaintiff arrived at the Forsyth County local
confinement facility, he completed a medical intake form
disclosing that he had a heart condition and took Coumadin
daily, along with other medications. (Id. ¶ 90.)

- 3 -

On November 7, 2012, Plaintiff was transferred to the Davie County local confinement facility. (Id. ¶ 92.) At the Davie County local confinement facility, Plaintiff completed another intake form disclosing that he had a replacement aortic valve and a history of heart stents. (Id. ¶ 93.) Plaintiff met with Defendant Fran Jackson ("Jackson"), to whom he disclosed his heart condition. (Id. ¶ 94.) Jackson listened to Plaintiff's heart with a stethoscope, commenting "That's what you say," or words to that effect. (Id.)

On November 8, 2012, Plaintiff's daughter delivered a small supply of Plaintiff's medications, including Coumadin, to the Davie County local confinement facility. (Id. ¶ 95.) Plaintiff believes that Jackson refused to administer the medication delivered by his daughter, with Jackson stating "I don't know if your wife or daughter is a meth cook." (Id. ¶ 97.) Plaintiff believes a document was delivered to Davie County local confinement facility stating Plaintiff takes 7 mg of Coumadin by mouth daily. (Id. ¶ 98.)

On November 13, 2012, Plaintiff's blood was drawn and tested for INR levels, which showed Plaintiff's coagulant level at 1.07, considered to be a baseline level and below the therapeutic level specified for Plaintiff, indicating that Plaintiff did not receive proper Coumadin doses for several days

- 4 -

prior to the test. (Id. ¶ 99.) Plaintiff did not receive proper doses of Coumadin in a timely manner while confined at the Davie County local confinement facility despite making efforts to advise and alert all appropriate officials to his medical condition and need for medical care. (Id. ¶¶ 100-01.) Plaintiff asserts that "Defendants" had actual knowledge of Plaintiff's medical condition and need for medical care, but withheld necessary medical care from Plaintiff. (Id. ¶ 102.) Plaintiff asserts "Defendants" had policies and procedures in place at the Davie County local confinement facility that were designed to, or operated to, deprive Plaintiff of medical care. (Id. ¶ 103.)

Plaintiff was transferred from the Davie County local confinement facility to the Stokes County local confinement facility on November 16, 2012. (Id. ¶ 104.) Plaintiff believes that Jackson created a transfer form dated November 15, 2012, which noted that Plaintiff was to receive medications, including Coumadin, and that Plaintiff was scheduled to have an INR blood test on November 23, 2012. (Id. ¶ 105.) On November 16, 2012, an intake form was completed for Plaintiff at Stokes County local confinement facility, which specified Coumadin doses and timing that differed from the transfer form completed by Jackson. (Id. ¶ 106.)

- 5 -

The records provided to Plaintiff in response to his requests to Sheriff Stokes and to Sheriff Marshall reflect that no Coumadin was administered to Plaintiff on November 16, 17, or 18 of 2012. (Id. ¶ 107.) "Emergency" doses of Coumadin were administered to Plaintiff beginning November 19, 2012. (Id. ¶ 108.) Nothing in "the records" reflects that any licensed M.D. was ever consulted by anyone at the Stokes County local confinement facility or that Plaintiff was ever permitted to have an examination or consultation with a licensed M.D. during this medical emergency. (Id. ¶ 109.) Nothing in "the records" reflects that the "emergency" doses of Coumadin administered to Plaintiff at the Stokes County local confinement facility were prescribed by any licensed M.D. (Id. ¶ 110.) Nothing in "the records" reflects how the determination to administer Coumadin was made or under whose supervision such determinations were made. (Id. ¶ 111.)

Plaintiff alleges that at all times, "defendants" had a duty to Plaintiff to maintain and preserve accurate records relating to Plaintiff's medical care, but failed to discharge this duty. (Id. ¶ 112.) Plaintiff alleges that during and in response to Plaintiff's medical emergency, "defendants" had a duty to provide access to a licensed M.D., but deliberately withheld access to necessary and appropriate care by a licensed

- 6 -

M.D., "exhibiting deliberate indifference to plaintiff's medical needs, and in violation of the statutory duties and obligations set out hereinabove." (Id. ¶ 113.)

Plaintiff was released from Stokes County local confinement facility on November 21, 2012. (Id. ¶ 114.) During the Thanksgiving holiday, Plaintiff developed severe abdominal pain and began perspiring profusely. (Id. ¶ 115.) Plaintiff went to Wake Forest Baptist Medical Center for evaluation, where physicians determined that the interruptions in Coumadin that occurred while Plaintiff was confined at the Davie County and Stokes County local confinement facilities caused Plaintiff to develop blood clots which migrated to his gastrointestinal tract, creating intestinal blockages. (Id. ¶ 116.)

Removal of the blood clots and blockages required emergency surgery on November 29, 2012. (Id. ¶ 117.) Additional blood clotting was removed through surgery on January 19, 2013. (Id. ¶ 118.) Fissures formed at the sites of incision in Plaintiff's intestines and colon where the blood clots were removed. (Id. ¶ 119.) On July 3, 2013, the fissures in Plaintiff's intestines and colon erupted, causing severe medical complications and injuries. (Id. ¶ 120.) A portion of Plaintiff's bowel was removed as a result of these events. (Id. ¶ 121.) Plaintiff has suffered one or more strokes as a result of the interruption in

- 7 -

Coumadin that occurred while he was confined at the Davie County and Stokes County local confinement facilities. (Id. ¶ 122.) Plaintiff suffered pain, loss of quality of life, reduced life expectancy, medical expense, and anticipated future medical expense as a result. (Id. ¶ 123.) Plaintiff alleges that "defendants" acted with deliberate indifference to Plaintiff's medical needs, and knowingly, deliberately and intentionally violated statutory duties and Plaintiff's constitutional rights to medical care while Plaintiff was a prisoner or detainee. (Id. ¶ 124.)

Plaintiff alleges that DHHS and the Secretary have duties and responsibilities to prisoners to prescribe minimum statewide standards to guide and assist local governments in developing programs that provide for the humane treatment of prisoners and detainees. (Id. at 7.) Plaintiff further alleges that DHHS and the Secretary are required to inspect local confinement facilities, including in Davie County and Stokes County, semiannually to investigate the conditions of confinement and determine whether the facilities meet published minimum standards. (Id. at 8.)

Plaintiff alleges that DHHS and the Secretary failed to perform their statutory duties under N.C. Gen. Stat. § 153A and other statutory, administrative and regulatory laws and that

- 8 -

such conduct was a proximate cause of the injuries and damages suffered by Plaintiff. (Id. at 30.) Plaintiff also alleges that DHHS and the Secretary knew, or had reason to know, that the system for providing medical care to prisoners in local confinement facilities was ineptly provided by local officials, yet they failed to take timely action to eliminate the risks to prisoners and detainees. (Id. at 34-35.) Plaintiff alleges the following claims for relief against DHHS and the Secretary: first claim for injunction; second claim for negligence under N.C. Gen. Stat. § 153A; eighth claim for negligent supervision; eleventh claim for false imprisonment; twelfth claim for intentional infliction of emotional distress; thirteenth claim pursuant to 43 U.S.C § 1983; and sixteenth claim for medical malpractice. (Id. at 28-30, 34-35, 37-41.)

## III. **LEGAL STANDARDS**

The existence of subject matter jurisdiction is a threshold issue the court must address before considering the merits of the case. Jones v. Am. Postal Workers Union, 192 F.3d 417, 422 (4th Cir. 1999). The burden of proving subject matter jurisdiction is on the party asserting jurisdiction. Richmond, Fredericksburg & Potomac R.R. Co. v. United States, 945 F.2d 765, 768 (4th Cir. 1991) (citing Adams v. Bain, 697 F.2d 1213, 1219 (4th Cir. 1982)). Courts "should dismiss a complaint for

- 9 -

lack of subject matter jurisdiction pursuant to Rule 12(b)(1) if the complaint fails to allege facts upon which subject matter jurisdiction can be based or if jurisdictional allegations in the complaint are not true." McLaughlin v. Safway Servs., LLC, 429 F. App'x. 347, 348 (4th Cir. 2011); Adams, 697 F.2d at 1219 (outlining two ways lack of subject matter jurisdiction arises: failure "to allege facts upon which subject matter jurisdiction can be based" or when "the jurisdictional allegations of the complaint were not true").

It is undisputed that Plaintiff asserted federal claims and that this case was removed based upon federal claim jurisdiction. See 28 U.S.C. § 1331; (Removal Notice (Doc. 1) at 5.) As a result, removal and this court's subject matter jurisdiction pursuant to 28 U.S.C. § 1331 are not in dispute. However, DHHS and the Secretary charge additional jurisdictional issues for which the burden to establish jurisdiction is on Plaintiff. See Richmond, 945 F.2d at 768 ("When a Rule 12(b)(1) motion challenge is raised to the factual basis for subject matter jurisdiction, the burden of proving subject matter jurisdiction is on the plaintiff."). The district court should grant the Rule 12(b)(1) motion to dismiss "only if the material jurisdictional facts are not in dispute and the moving party is

entitled to prevail as a matter of law." <u>Richmond</u>, 945 F.2d at 768.

In analyzing a motion to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure for "failure to state a claim upon which relief can be granted," a court must determine whether the complaint is legally and factually sufficient. See <u>Ashcroft v. Iqbal</u>, 556 U.S. 662 (2009); <u>Bell Atl. Corp. v. Twombly</u>, 550 U.S. 544, 570 (2007). To survive a Rule 12(b)(6) motion, a plaintiff must allege "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" <u>Iqbal</u>, 556 U.S. at 678 (quoting <u>Twombly</u>, 550 U.S. at 570). For a claim to be facially plausible, a plaintiff must "plead[] factual content that allows the court to draw the reasonable inference that the defendant is liable." <u>Id.</u> (citing <u>Twombly</u>, 550 U.S. at 556). The mere possibility that a defendant acted unlawfully is not sufficient for a claim to survive a motion to dismiss. <u>Iqbal</u>, 556 U.S. at 678. When ruling on a Rule 12(b)(6) motion, a court must accept the complaint's factual allegations as true. <u>Id.</u> However, a court does not have to accept as true mere legal conclusions, and "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." <u>Id.</u> (citing <u>Twombly</u>, 550 U.S. at 555).

## IV.  **ANALYSIS**

As an initial matter, this court notes that during the motions hearing held on March 20, 2017, Moving Defendants and Plaintiff stipulated to the dismissal of any and all claims asserted against Rick Brajer in his individual capacity. As such, any claims asserted by Plaintiff against Rick Brajer in his individual capacity will be dismissed without prejudice.

### A.  **Eleventh Amendment Immunity and the Doctrine of Sovereign Immunity**

DHHS and the Secretary argue that the Eleventh Amendment and the doctrine of sovereign immunity bar Plaintiff's claims against them. (Doc. 36 at 4-5.) Plaintiff argues that DHHS and the Secretary waived their immunity by consenting to removal to this court in the Petition for Removal. (Doc. 48 at 7-8.) DHHS and the Secretary respond that the State of North Carolina waived immunity from suit in tort claims to the extent provided for by N.C. Gen. Stat. § 143-291 et seq. ("Tort Claims Act"). (Doc. 49 at 2-3.) They argue, however, that their consent to removal did not waive "sovereign immunity with respect to the various non-tort claims asserted against them," further arguing that this court has jurisdiction to determine whether such immunity bars Plaintiff's state claims against them and whether

- 12 -

such immunity bars Plaintiff's claims pursuant to 42 U.S.C.
§ 1983. (Id.)

The doctrine of sovereign immunity is "based on the logical
and practical ground that there can be no legal right as against
the authority that makes the law on which the right depends."
Nevada v. Hall, 440 U.S. 410, 416 (1979) (internal quotation
marks omitted). The States' immunity from suit is sometimes
referred to as Eleventh Amendment Immunity. The Eleventh
Amendment provides that "[t]he Judicial power of the United
States shall not be construed to extend to any suit in law or
equity, commenced or prosecuted against one of the United States
by Citizens of another State, or by Citizens or Subjects of any
Foreign State." U.S. Const. amend. XI. However, "the sovereign
immunity of the States neither derives from, nor is limited by,
the terms of the Eleventh Amendment." Alden v. Maine, 527 U.S.
706, 713 (1999). Rather, "States' immunity from suit is a
fundamental aspect of the sovereignty which the States enjoyed
before the ratification of the Constitution." Id. The Eleventh
Amendment "confirmed . . . sovereign immunity as a
constitutional principle," id. at 728-29, and is "but an example
of state sovereign immunity." Stewart v. North Carolina, 393
F.3d 484, 488 (4th Cir. 2005). Therefore, the State "may not be
sued in its own courts or elsewhere unless it has consented by

- 13 -

statute to be sued or has otherwise waived its immunity from suit." Welch Contracting, Inc. v. N.C. Dep't of Transp., 175 N.C. App. 45, 51, 622 S.E.2d 691, 695 (2005) (quoting Battle Ridge Cos. v. N.C. Dep't of Transp., 161 N.C. App. 156, 157, 587 S.E.2d 426, 427 (2003)).

Here, it is not disputed that DHHS is an agency of the State of North Carolina. Because DHHS is an agent of the State, it follows that the Secretary is also an agent of the State, and they each have immunity unless waived. See Carter v. Stanly Cty., 123 N.C. App. 235, 237-38, 472 S.E.2d 378, 380-81 (1996); Green v. Kearney, 203 N.C. App. 260, 268, 690 S.E.2d 755, 762 (2010). DHHS and the Secretary admit that the State of North Carolina has waived immunity from suit in tort claims to the extent provided for by the Tort Claims Act. (Doc. 49 at 3.) This statutory waiver of sovereign immunity means the State may "be sued only in the manner and upon the terms and conditions prescribed" in the statute. Kawai Am. Corp. v. Univ. of N.C. at Chapel Hill, 152 N.C. App. 163, 165, 567 S.E.2d 215, 217 (2002).

The Tort Claims Act provides a limited waiver of State sovereign immunity for negligence actions against public officers when acting in their official capacity. Id. at 165-66, 567 S.E.2d at 217; Green, 203 N.C. App. at 268-69, 690 S.E.2d at 762. The Tort Claims Act also establishes that the appropriate

- 14 -

forum for such suits against "departments, institutions and agencies of the State" is the North Carolina Industrial Commission. Carter, 123 N.C. App. at 238-39, 472 S.E.2d at 380-81. Consequently, Plaintiff's claims based on negligence can be pursued, but they must be pursued before the Industrial Commission, and will therefore be dismissed from this matter. See Guthrie v. N.C. State Ports Auth., 307 N.C. 522, 540-41, 299 S.E.2d 618, 628 (1983).

Although the Tort Claims Act authorizes recovery for negligent torts, see N.C. Gen. Stat. § 143-291, intentional torts committed by agents and officers of the State are not compensable under the Tort Claims Act. Kawai Am. Corp., 152 N.C. App. at 166, 567 S.E.2d at 217-18 (citation omitted). Plaintiff's eleventh claim for false imprisonment and twelfth claim for intentional infliction of emotional distress are intentional torts. See Restatement (Second) of Torts §§ 35, 46 (1965). Because the State has not waived sovereign immunity for intentional torts by action of the Tort Claims Act or other statute, and because DHHS and the Secretary did not waive immunity by removal to this court as discussed below, Plaintiff's claims for false imprisonment and intentional infliction of emotional distress are barred by the doctrine of sovereign immunity. See Frazier v. Murray, 135 N.C. App. 43, 48,

- 15 -

519 S.E.2d 525, 528-29 (1999) (holding that dismissal of claims for false imprisonment and intentional infliction of emotional distress were proper because "[i]njuries intentionally inflicted by employees of a state agency are not compensable under the Tort Claims Act"); Kawai Am. Corp., 152 N.C. App. at 165-67, 567 S.E.2d at 217-18.

Although the State waived immunity to the extent provided for by the Tort Claims Act, the question remains whether DHHS and the Secretary waived immunity for Plaintiff's other claims by joining in the Petition for Removal. "The Supreme Court repeatedly has admonished that '[t]he test for determining whether a State has waived its immunity from federal-court jurisdiction is a stringent one.'" In re Sec'y of Dep't of Crime Control & Pub. Safety, 7 F.3d 1140, 1145 (4th Cir. 1993) (quoting Atascadero State Hosp. v. Scanlon, 473 U.S. 234, 241 (1985)). In accordance with the decision in Stewart, this court finds that DHHS and the Secretary did not waive immunity by consenting to the removal of the action to federal court for resolution of the immunity question. See Stewart, 393 F.3d at 490 (holding that the State "did not waive sovereign immunity by voluntarily removing the action to federal court for resolution of the immunity question").

In addition to the state claims discussed above, Plaintiff also seeks recovery pursuant to 42 U.S.C. § 1983 in his thirteenth claim for relief, wherein he alleges that he "has suffered damages in an amount exceeding twenty-five thousand dollars." (Second Am. Compl. (Doc. 57) at 38.) In Will v. Mich. Dep't of State Police, the Supreme Court held that the Eleventh Amendment bars § 1983 suits against a state unless the state has waived its immunity. 491 U.S. 58, 66-67 (1989); see also Pennhurst State Sch. & Hosp. v. Halderman, 465 U.S. 89, 100 (1984) ("It is clear, of course, that in the absence of consent a suit in which the State or one of its agencies or departments is named as the defendant is proscribed by the Eleventh Amendment."). This immunity extends to governmental entities that are considered "arms of the State" for Eleventh Amendment purposes. Will, 491 U.S. at 70. Again, it is not disputed that DHHS is an agency of the State of North Carolina, and this court has found that DHHS did not waive its sovereign immunity by consenting to removal in this case.

With respect to state officials sued in their official capacity, such as the Secretary, the Supreme Court concluded that "a suit against a state official in his or her official capacity is not a suit against the official but rather is a suit against the official's office. As such, it is no different from

- 17 -

a suit against the State itself." Id. at 71 (citing Brandon v. Holt, 469 U.S. 464, 471 (1985), Kentucky v. Graham, 473 U.S. 159, 165-66 (1985), and Monell v. Dep't of Soc. Servs., 436 U.S. 658, 690 n.55 (1978)). Here, a suit against the Secretary in his official capacity is no different than a suit against DHHS.

Furthermore, it is well settled that "a suit by private parties seeking to impose a liability which must be paid from public funds in the state treasury is barred by the Eleventh Amendment." Edelman v. Jordan, 415 U.S. 651, 663 (1974). "It is [also] well settled that the Eleventh Amendment bars a suit by private parties to recover money damages from the state or its alter egos acting in their official capacities . . . [and] bars . . . § 1983 damage claims." Huang v. Bd. of Governors of Univ. of N.C., 902 F.2d 1134, 1138 (4th Cir. 1990). Moreover, "neither a State nor its officials acting in their official capacities are 'persons' under § 1983" and thus do not fall within the purview of § 1983 for recovery of money damages. Will, 491 U.S. at 71.

However, in distinguishing Plaintiff's claim for monetary damages under § 1983 from his claim for injunctive relief, the Supreme Court has said that, "a state official in his or her official capacity, when sued for injunctive relief, would be a person under § 1983 because 'official-capacity actions for

- 18 -

prospective relief are not treated as actions against the State.'" Id. n.10 (quoting Kentucky, 473 U.S. at 167, n.14).

Based on the reasoning above, this court finds that DHHS and the Secretary in his official capacity did not waive their sovereign immunity and may not be held liable for monetary damages pursuant to § 1983. To the extent Plaintiff's claim for injunctive relief against the Secretary in his official capacity survives this basis for dismissal, this court will address that claim below. See Ex parte Young, 209 U.S. 123, 159-60 (1908) (limited exception to Eleventh Amendment immunity is applicable only when plaintiffs allege an ongoing violation of federal law).

Finally, this court notes that DHHS has a duty under North Carolina law to develop minimum standards for the operation of local confinement facilities and to visit and inspect each facility at least semi-annually. N.C. Gen. Stat. §§ 153A-221, 222. The methods for enforcing the minimum standards are set out in § 153A-223, and provide that "if the Secretary determines that conditions in the facility jeopardize the safe custody, safety, health, or welfare of persons confined in the facility, the Secretary may order corrective action or close the facility." N.C. Gen. Stat. § 153A-223. The Fourth Circuit has concluded that § 153A-223 does not vest officials with a

- 19 -

mandatory duty to remedy substandard jail conditions, thus

"their inaction cannot be seen as a cause of those conditions

and a § 1983 suit cannot be maintained against them." Reid v.

Kayye, 885 F.2d 129, 131 (4th Cir. 1989).[2]

> It is well settled that 42 U.S.C. § 1983 provides
> a remedy for conduct of state officials only if that
> conduct causes the deprivation of a federally
> protected right. Monell v. Department of Social
> Services of the City of New York, 436 U.S. 658, 98
> S. Ct. 2018, 56 L.Ed.2d 611 (1978). Because, in the
> case at bar, appellees had no duty to remedy the
> challenged jail conditions, their inaction cannot be
> seen as a cause of those conditions and a § 1983 suit
> cannot be maintained against them.

Id. The Fourth Circuit further held in Reid that supervisory

liability cannot extend to state officials when the state duty

"is not accompanied by an obligation to extirpate

constitutionally substandard conditions or activities that may

---

[2] Plaintiff relies in his brief on Multiple Claimants v.
N.C. Dep't of Health and Human Servs., 361 N.C. 372, 646 S.E.2d
356 (2007) in arguing that N.C. Gen. Stat. § 153A-220 creates a
special relationship of DHHS to prisoners and detainees. (Doc.
48 at 17-18.) While Multiple Claimants is binding upon this
court as the North Carolina Supreme Court's interpretation of
state law, Multiple Claimants was limited in its analysis to the
public duty defense under state law. See id. ("The question
before us concerns the application of the public duty doctrine
to the statutorily-imposed duty of the Department of Health and
Human Services . . . to inspect local confinement
facilities. . . . [W]e hold that plaintiffs may pursue their
negligence claims against DHHS."). Multiple Claimants does not
address the statutory responsibilities as a matter of
Constitutional law, nor does it mention N.C. Gen. Stat. § 153A-
223. This court therefore finds Reid controlling and not
inconsistent with Multiple Claimants.

be encountered." Id. at 132. For these reasons, Plaintiff's § 1983 claim will be dismissed.

### B.   **Claim for Injunctive Relief**

DHHS and the Secretary argue, inter alia, that the claim for injunction is moot because Plaintiff was released from the Davie County and Stokes County local confinement facilities in 2012, and there is no allegation that he has reentered either facility. (Doc. 36 at 16-17.) "[A]s a general rule, a prisoner's transfer or release from a particular prison moots his claims for injunctive and declaratory relief with respect to his incarceration there." Rendelman v. Rouse, 569 F.3d 182, 186 (4th Cir. 2009). The reasoning is that:

> Once an inmate is removed from the environment in which he is subjected to the challenged policy or practice, absent a claim for damages, he no longer has a legally cognizable interest in a judicial decision on the merits of his claim. Any declaratory or injunctive relief ordered in the inmate's favor in such situations would have no practical impact on the inmate's rights and would not redress in any way the injury he originally asserted. . . . [There is] no further need for such declaratory or injunctive relief, for he is free of the policy or practice that provoked his lawsuit in the first place.

Incumaa v. Ozmint, 507 F.3d 281, 287 (4th Cir. 2007). Because Plaintiff was released from the Davie County and Stokes County local confinement facilities in 2012, and appears to have remained out of confinement since that time, entering an

- 21 -

injunction in the manner sought by Plaintiff would not personally benefit Plaintiff or redress in any way the injury he originally asserted.

Plaintiff does not dispute that he is no longer in custody, but argues that his injunctive relief claim is not moot because it "is capable of repetition but likely to escape review." (Doc. 48 at 19.) "In the absence of a class action, jurisdiction on the basis that a dispute is capable of repetition, yet evading review is limited to the exceptional situation." Incumaa, 507 F.3d at 289 (internal quotation marks omitted) (citing Los Angeles v. Lyons, 461 U.S. 95, 109 (1983)). This narrow exception is one in which "(1) the challenged action is in its duration too short to be fully litigated prior to cessation or expiration; and (2) there is a reasonable expectation that the same complaining party will be subject to the same action again." Williams v. Ozmint, 716 F.3d 801, 809–10 (4th Cir. 2013) (quoting Lux v. Judd, 651 F.3d 396, 401 (4th Cir. 2011) and Fed. Election Comm'n v. Wisc. Right to Life, Inc., 551 U.S. 449, 462 (2007)). Because Plaintiff is seeking to invoke this exception, he bears the burden of demonstrating that it applies. Incumaa, 507 F.3d at 289 (citing Brooks v. Vassar, 462 F.3d 341, 348 (4th Cir. 2006)).

Here, Plaintiff does not offer any authority to support his argument that this exception applies but relies on the assertion that "a detainee might be denied medication . . . should they become entangled with a local confinement facility that has contracted with SHP [Southern Health Partners, Inc.]." (Doc. 48 at 19-20.) This is not enough for Plaintiff to meet his burden. Plaintiff's argument that his claim is capable of repetition rests on mere speculation of a hypothetical detainee at an unspecified confinement facility. "[A] federal court has neither the power to render advisory opinions nor 'to decide questions that cannot affect the rights of litigants in the case before them.'" Preiser v. Newkirk, 422 U.S. 395, 401 (1975) (quoting North Carolina v. Rice, 404 U.S. 244, 246 (1971)).

Additionally, there is nothing in the record to indicate that Plaintiff would be subject to the confinement facility policies again absent some culpable conduct on his part requiring confinement. See Williams, 716 F.3d at 810; Incumaa, 507 F.3d at 289. Assuming that Plaintiff will partake in behavior causing him to again be detained in the Davie County or Stokes County local confinement facilities is not appropriate for this analysis. "Such conjecture as to the likelihood of repetition has no place in the application of this exceptional and narrow grant of judicial power . . . . There must be a

- 23 -

'demonstrated probability' that the challenged action will recur again, and to the same complainant." <u>Incumaa</u>, 507 F.3d at 289 (internal citations and quotation marks omitted). While it is conceivable that Plaintiff could again be detained at the Davie County or Stokes County local confinement facilities, there is nothing to prevent him from seeking injunctive or declaratory relief then. Plaintiff has demonstrated nothing more than speculation – not a reasonable expectation. Therefore, this court finds that the narrow exception of "capable of repetition, yet evading review" does not apply in this case, and Plaintiff's claim for injunctive relief is moot.

V.   **CONCLUSION**

For the reasons set forth herein, **IT IS HEREBY ORDERED** that the Motion to Dismiss filed by Defendants North Carolina Department of Health and Human Services and Rick Brajer (Doc. 35) is **GRANTED** and that all claims asserted against DHHS and the Secretary in her official capacity are **DISMISSED WITHOUT PREJUDICE. IT IS FURTHER ORDERED** that all claims against Rick Brajer in his individual capacity are **DISMISSED WITHOUT PREJUDICE.**

This the 30th day of March, 2017.

_____
United States District Judge

- 24 -