IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

DAVID RAY GUNTER,                    )
                                     )
              Plaintiff,             )
                                     )
      v.                             )      1:16CV262
                                     )
SOUTHERN HEALTH PARTNERS, INC., )
et al.,                              )
                                     )
              Defendants.            )


## MEMORANDUM OPINION AND ORDER

**OSTEEN, JR., District Judge**

This matter is before the court on a Motion for Partial Judgment on the Pleadings filed by Defendants Southern Health Partners, Inc., Jason Junkins, Sandra Hunt, Fran Jackson, and Manuel Maldonado (collectively "Moving Defendants"). (Doc. 63.) Plaintiff filed a response in opposition (Doc. 75); Moving Defendants filed a reply (Doc. 77); and Plaintiff filed a surreply (Doc. 78). This matter is now ripe for resolution, and for the reasons stated below, Moving Defendants' motion for partial judgment on the pleadings will be denied.

Also before the court is Plaintiff's Contigent Motion (Doc. 79) to which Moving Defendants and Defendants Davie County, Andy Stokes, Cameron Sloan, Stokes County, Mike Marshall, Eric Cone, Western Surety Company, and Ohio Casualty Company have responded

in opposition. (Docs. 81, 82.) Plaintiff has filed replies

(Docs. 85, 86). For the reasons stated herein, Plaintiff's

motion will be denied as moot.

I.    **FACTUAL AND PROCEDURAL BACKGROUND**

Plaintiff was diagnosed with a heart defect as an infant.

(Second Amended Complaint ("Second Am. Compl.") (Doc. 57) ¶ 79.)

Plaintiff's physicians prescribed medication to maintain his

heart health and circulatory system, including Coumadin, an

anticoagulant. (Id. ¶ 83.) The prescribed medications are

essential in maintaining Plaintiff's health. (Id. ¶ 84.)

Plaintiff must take regular doses of his medications, including

Coumadin, to maintain levels of the medicine at a therapeutic

level. (Id. ¶¶ 85-87.)

On November 6, 2012, Plaintiff was arrested in Forsyth

County, North Carolina. (Id. ¶ 89.) Plaintiff remained in

Forsyth County that night. (Id.) On November 7, 2012, Plaintiff

was transferred to the Davie County local confinement facility.

(Id. ¶ 92.) Plaintiff did not receive proper doses of Coumadin

in a timely manner while confined at the Davie County local

confinement facility despite making efforts to advise and alert

all appropriate officials to his medical condition and need for

medical care. (Id. ¶¶ 100-01.)

Plaintiff was transferred from the Davie County local confinement facility to the Stokes County local confinement facility on November 16, 2012. (Id. ¶ 104.) The records provided to Plaintiff reflect that no Coumadin was administered to Plaintiff on November 16, 17, or 18. (Id. ¶ 107.) "Emergency" doses of Coumadin were administered to Plaintiff beginning November 19, 2012. (Id. ¶ 108.)

Plaintiff was released from the Stokes County local confinement facility on November 21, 2012. (Id. ¶ 114.) Shortly thereafter, Plaintiff went to Wake Forest Baptist Medical Center for evaluation, where physicians determined that the interruptions in Coumadin, which occurred while Plaintiff was confined at the Davie County and Stokes County local confinement facilities, caused Plaintiff to develop blood clots which migrated to his gastrointestinal tract, creating intestinal blockages. (Id. ¶¶ 115-16.) As a result, Plaintiff required several surgeries and suffered numerous other complications. (Id. ¶¶ 117-22.)

Plaintiff suffered pain, loss of quality of life, reduced life expectancy, medical expenses, and anticipated future medical expenses as a result of the interruption in Coumadin that occurred while he was confined at the Davie County and

Stokes County local confinement facilities from November 7, 2012, to November 21, 2012. (Id. ¶ 123.)

Plaintiff commenced the present action in the Randolph County Superior Court Division of the State of North Carolina on November 6, 2015, by filing an Application Extending Time to File Complaint (Petition for Removal, Ex. B (Doc. 1-2)), and a Motion Extending Statute of Limitations in Medical Malpractice Action (Petition for Removal, Ex. C (Doc. 1-3)). Plaintiff was granted permission to file a complaint up to and including November 26, 2015, by order of the Assistant Clerk of Superior Court. (Doc. 1-2.) By order of the Superior Court Judge, the statute of limitations for Plaintiff's medical malpractice action was extended to and including March 4, 2016. (Doc. 1-3.)

Plaintiff filed his original Complaint on November 25, 2015, against Southern Health Partners, Inc. Sandra Hunt, Fran Jackson, and others alleging the following claims: Injunction; Official Capacity Claims against the State of North Carolina; Official Capacity Claims against Davie County, Davie County Board of Commissioners, Stokes County, and Stokes County Board of Commissioners; Official Capacity Claims against Defendant Sheriffs and their Deputies; Direct Claims against Sheriffs and Jailers; Injury to Prisoner by Jailer N.C. Gen. Stat. § 162-55; Action on Sheriffs' Bond; Negligent Supervision; Negligence of

Southern Health Partners ("SHP"), Fran Jackson, and Sandra Hunt;
42 U.S.C. § 1983 Claims against SHP, Fran Jackson, and Sandra
Hunt; False Imprisonment; and Torture and Intentional Infliction
of Emotional Distress. (Complaint ("Compl.") (Doc. 23) at 27-
37.) The first Complaint did not contain a 9(j) certification
pursuant to N.C. Gen. Stat § 1A-1, Rule 9(j) ("9(j)
certification").

Plaintiff filed an Amended Complaint in this matter on
March 3, 2016, adding Defendant Manuel Maldonado and adding 42
U.S.C. § 1983 claims against North Carolina Defendants,
Defendants Boards of County Commissioners, and Defendant
Sheriffs and their Employees, as well as adding a Medical
Malpractice claim. (Amended Complaint ("Am. Compl.") (Doc. 26)
at 5, 40-43.) The Amended Complaint contained a "9(j) Medical
Malpractice Certification." (Id. at 87.) The Amended Complaint
also alleged negligence under the common law doctrine of res
ipsa loquitur. (Id. at 40-43.)

A Petition for Removal to this court was filed on April 1,
2016. (Doc. 1.) On December 27, 2016, with leave of court,
Plaintiff filed a Second Amended Complaint to add Defendant Ohio
Casualty as the proper defendant in lieu of Marsh USA
Incorporated. (Order (Doc. 56); Second Am. Compl (Doc. 57).)
Moving Defendants filed an Answer to the Second Amended

Complaint on January 9, 2017. (Doc. 61.) Moving Defendants filed

the present Motion for Partial Judgment on the Pleadings on

February 22, 2017. (Mot. for Partial J. on Pleadings (Doc. 63).)

## II.  **LEGAL STANDARD**

Under Federal Rule of Civil Procedure 12(c), a party may

move for judgment on the pleadings "[a]fter the pleadings are

closed — but early enough not to delay trial." Fed. R. Civ. P.

12(c). Such motions are "designed to dispose of cases when the

material facts are not in dispute and the court can judge the

case on its merits by considering the pleadings . . . ." Preston

v. Leake, 629 F. Supp. 2d 517, 521 (E.D.N.C. 2009).

Rule 12(c) motions are judged by the same standards as Rule

12(b)(6) motions. Drager v. PLIVA USA, Inc., 741 F.3d 470, 474

(4th Cir. 2014). Accordingly,

> a motion for judgment on the pleadings "should only be
> granted if, after accepting all well-pleaded
> allegations in the plaintiff's complaint as true and
> drawing all reasonable factual inferences from those
> facts in the plaintiff's favor, it appears certain
> that the plaintiff cannot prove any set of facts in
> support of his claim entitling him to relief."

Id. (citations omitted). However, Rule 12(c) motions are limited

in scope and courts must be "mindful that '[a] Rule 12(c) motion

tests only the sufficiency of the complaint and does not resolve

the merits of the plaintiff's claims or any disputes of fact.'"

Massey v. Ojaniit, 759 F.3d 343, 353 (4th Cir. 2014) (quoting Drager, 741 F.3d at 474).

When assessing a Rule 12(c) motion, the complaint, "the answer and any documents incorporated by reference in the pleadings may be considered. The 'factual allegations of the answer are taken as true, to the extent "they have not been denied or do not conflict with the complaint."'" [1] Blue Rhino Glob. Sourcing, Inc. v. Well Traveled Imps., Inc., 888 F. Supp. 2d 718, 721 (M.D.N.C. 2012) (citations omitted). However, courts "are not obliged to accept allegations that 'represent unwarranted inferences, unreasonable conclusions, or arguments,' or that 'contradict matters properly subject to judicial notice or by exhibit.'" Massey, 759 F.3d at 353 (citations omitted).

## III. **ANALYSIS**

Moving Defendants argue that they are entitled to a partial judgment on the pleadings on Plaintiff's eighth claim for

---

[1] Moving Defendants assert evidentiary objections under Local Rule 7.6 to Exhibits 1-5 of Plaintiff's Memorandum of Law in Opposition to Motion for Partial Judgment on the Pleadings (Doc. 75), and to any discussion in Plaintiff's Memorandum of the information contained in those exhibits "because they are not part of the pleadings at issue in this Motion for Partial Judgment on the Pleadings." (Moving Defs.' Reply (Doc. 77) at 9-10.) Moving Defendants' evidentiary objections to Docs. 75-1 through 75-5 are sustained and the information contained in these exhibits will not be considered by this court for purposes of this opinion.

Negligent Supervision, Plaintiff's ninth claim for Negligence, and Plaintiff's sixteenth claim for Medical Malpractice because Plaintiff failed to include a proper 9(j) certification. (Mot. for Partial J. on Pleadings (Doc. 63) at 2.) Moving Defendants argue that they are further entitled to a partial judgment on the pleadings on Plaintiff's eleventh claim for False Imprisonment and Plaintiff's twelfth claim for Torture and Intentional Infliction of Emotional Distress because these claims are pled against "defendants" generally, thereby preventing Moving Defendants from being able to identify the claims they need to defend against. (Id.)

### A.    **Rule 9(j) Certification**

Effective October 1, 2011, N.C. Gen. Stat. § 1A-1, Rule 9(j) ("Rule 9(j)") states that any complaint alleging medical malpractice shall be dismissed unless:

(1) The pleading specifically asserts that the medical care and all medical records pertaining to the alleged negligence that are available to the plaintiff after reasonable inquiry have been reviewed by a person who is reasonably expected to qualify as an expert witness under Rule 702 of the Rules of Evidence and who is willing to testify that the medical care did not comply with the applicable standard of care;

(2) The pleading specifically asserts that the medical care and all medical records pertaining to the alleged negligence that are available to the plaintiff after reasonable inquiry have been reviewed by a person that the complainant will seek to have qualified as an expert witness by motion under Rule 702(e) of the

> Rules of Evidence and who is willing to testify that the medical care did not comply with the applicable standard of care, and the motion is filed with the complaint; or
>
> (3) The pleading alleges facts establishing negligence under the existing common-law doctrine of res ipsa loquitur.

N.C. Gen. Stat. § 1A-1, Rule 9(j). The Supreme Court of North Carolina has stated that "medical malpractice complaints have a distinct requirement of expert certification with which plaintiffs must comply. Such complaints will receive strict consideration by the trial judge. Failure to include the certification necessarily leads to dismissal." Thigpen v. Ngo, 355 N.C. 198, 202, 558 S.E.2d 162, 165 (2002).[2] "A plaintiff's compliance with Rule 9(j) requirements clearly presents a question of law to be decided by a court . . . ." Carlton v. Melvin, 205 N.C. App. 690, 692, 697 S.E.2d 360, 362 (2010) (citation omitted).

Here, Plaintiff alleges that he complied with the 9(j) certification requirements by including the following language with his Amended Complaint:

> 2.   The medical care and medical records at issue in this case that are available to Plaintiff after

---

[2] The Thigpen decision discussed Rule 9(j) certification prior to its amendment in 2011. However, the Supreme Court of North Carolina, noting the 2011 amendment, acknowledged that "the general requirements remain substantially unchanged." Moore v. Proper, 366 N.C. 25, 29 n.1, 726 S.E.2d 812, 816 n.1 (2012).

reasonable inquiry have been reviewed by a
medical professional who is reasonably expected
to qualify as an expert witness under Rule 702 of
the North Carolina Rules of Evidence and who is
willing to testify that the medical care did not
comply with the applicable standard of care.

3.      The medical professionals include a physician's
assistant, practicing as such in a jail; a doctor
of pharmacy practicing as such in Winston Salem,
North Carolina; and, a registered nurse
practicing as such in High Point, North Carolina.

(Am. Compl. (Doc. 26) at 87.) The language of Plaintiff's 9(j)

certification differs from the language of the Rule 9(j)

certification in the following ways:

(1)  Plaintiff's 9(j) certification does not include the

word "all" to modify "medical records," and describes the

medical records as the ones "at issue in this case." (Am. Compl.

(Doc. 26) at 87.) Specifically, Plaintiff's 9(j) certification

states "[t]he medical care and medical records at issue in this

case" have been reviewed, whereas Rule 9(j) states "the medical

care and all medical records pertaining to the alleged

negligence" have been reviewed. (Id. (emphasis added); Rule N.C.

Gen. Stat. § 1A-1, Rule 9(j)(1) (emphasis added).)

(2)  Plaintiff's 9(j) certification states that "[t]he

medical care and medical records . . . have been reviewed by a

medical professional who is reasonably expected to qualify as an

expert witness under Rule 702 of the North Carolina Rules of

Evidence," whereas Rule 9(j) states that "the medical care and all medical records . . . have been reviewed by a <u>person</u> who is reasonably expected to qualify as an expert witness under Rule 702 of the Rules of Evidence." (Am. Compl. (Doc. 26) at 87 (emphasis added); Rule N.C. Gen. Stat. § 1A-1, Rule 9(j)(1) (emphasis added).)

Moving Defendants do not take issue with the differences listed in (2) above, but assert that the differences in (1) are "a catastrophic deviation from the statutory word track . . . constitut[ing] grounds for dismissal of Plaintiff's claims." (Moving Defs.' Mem. of Law in Supp. of Mot. for Partial J. on the Pleadings ("Moving Defs.' Br.") (Doc. 64) at 9.) Moving Defendants cite to three primary cases in support of their position: <u>Vaughan v. Mashburn</u>, 795 S.E.2d 781 (N.C. Ct. App. 2016), <u>review allowed,</u> 797 S.E.2d 299 (N.C. 2017), and <u>review denied,</u> 797 S.E.2d 4 (N.C. 2017); <u>Alston v. Hueske</u>, 781 S.E.2d 305 (N.C. Ct. App. 2016); and <u>Fintchre v. Duke Univ.,</u> 241 N.C. App. 232, 773 S.E.2d 318 (2015).

The first case cited by Moving Defendants as support for dismissal is <u>Vaughan v. Mashburn</u>.[3] 795 S.E.2d 781. In <u>Vaughan</u>, the plaintiff filed a medical malpractice complaint that stated,

---

[3] A petition for discretionary review has been granted by the North Carolina Supreme Court in <u>Vaughan</u>, 797 S.E.2d 299.

"the Plaintiff avers that <u>the medical care</u> received by [the plaintiff] complained of herein <u>has been reviewed</u>." <u>Id.</u> at 782. The appellate court noted that the language in the complaint came from a prior version of Rule 9(j) and that the plaintiff's 9(j) certification omitted the amended 2011 language "all medical records pertaining to the alleged negligence that are available to the plaintiff after reasonable inquiry." <u>Id.</u> at 782-83. The plaintiff conceded that her 9(j) certification omitted the quoted language, but argued that the evidence established she had fully complied with the substantive requirements of Rule 9(j). <u>Id.</u> at 782-83, 86. In affirming the trial court's order dismissing the plaintiff's medical malpractice claim, the appellate court relied on <u>Alston</u> and <u>Fintchre</u> in concluding that, although a "highly technical" decision, the plaintiff's failure to file the complaint with a "proper" 9(j) certification warranted dismissal. <u>Id.</u> at 788-89.

This court is not persuaded that the holding in <u>Vaughan</u> requires dismissal in this case. In <u>Vaughan</u>, the focus of the defective certification was that it verified a review of the medical care but completely omitted any reference to whether medical records had been reviewed. As the appellate court noted in discussing the defective certification, the 2011 amendment of Rule 9(j) "created an additional requirement that plaintiffs

certify the review of their medical <u>records</u>, as well as their

medical <u>care</u>, by 'persons reasonably expected to qualify as

expert witnesses . . . .'" <u>Id.</u> at 783 n.1. The plaintiff in

<u>Vaughan</u> completely omitted the additional requirement of

certifying the review of medical records, whereas here,

Plaintiff certified that both the medical care and medical

records have been reviewed by a medical professional reasonably

expected to qualify as an expert witness.

The second case cited by Moving Defendants is <u>Alston v.</u>

<u>Hueske</u>, 781 S.E.2d 305 (N.C. Ct. App. 2016), wherein the

plaintiff's complaint alleged the following:

> 29.  Prior to commencing this action, the medical
> records were reviewed and evaluated by a duly Board
> Certified who opined that the care rendered to
> Decedent was below the applicable standard of care.

> 30.  . . . The medical care referred to in this
> complaint has been reviewed by person(s) who are
> reasonably expected to qualify as expert witnesses, or
> whom the plaintiff will seek to have qualified as
> expert witnesses under Rule 702 of the Rules of
> Evidence, and who is willing to testify that the
> medical care rendered plaintiff by the defendant(s)
> did not comply with the applicable standard of care.

<u>Id.</u> at 309-10. The court concluded that the "wording of the

complaint render[ed] compliance with 9(j) problematic," and

further found "the wording of th[e] complaint insufficient to

meet the high standard of Rule 9(j)." <u>Id.</u> at 310.

Moving Defendants argue that the problematic wording in Alston was the omission of the words "**all** medical records." (Moving Defs.' Br. (Doc. 64) at 10.) However, the Alston court actually took issue with whether the alleged expert witness could reasonably be expected to qualify as an expert under Rule 702.[4] Alston, 781 S.E.2d at 310. The court acknowledged that although the complaint alleged "the medical care was reviewed by someone reasonably expected to qualify as an expert witness," the complaint did not "properly allege the medical records were reviewed by a person reasonably expected to qualify as an expert witness." Id. By alleging in the complaint that "the medical records were reviewed and evaluated by a duly Board Certified," (id. at 309), the appellate court found that it did "not have enough information to evaluate whether this witness

---

[4] The court did not discuss whether "all medical records" versus "the medical records" was problematic or was a reason for finding the 9(j) certification defective, nor did the court discuss whether the phrase "medical records pertaining to the alleged negligence" versus "medical care referred to in this complaint" was problematic or was a reason for the defective language in the 9(j) certification. Alston v. Hueske, 781 S.E.2d 305, 309-10 (N.C. Ct. App. 2016). However, as discussed herein, the court did not take issue with the complaint's 9(j) certification language related to medical care, wherein it stated that "[t]he medical care referred to in this complaint has been reviewed by person(s) who are reasonably expected to qualify as expert witnesses." Id. (emphasis added).

could reasonably be expected to qualify as an expert in th[e] case." Id. at 310.

It should be noted that the Alston court took no issue with the complaint's 9(j) certification language related to medical care, which read "[t]he medical care referred to in this complaint has been reviewed by person(s) who are reasonably expected to qualify as expert witnesses, or whom the plaintiff will seek to have qualified as expert witnesses under Rule 702 of the Rules of Evidence." Id. at 309-10. This language differs from the Rule 9(j) language in that it states "referred to in this complaint" rather than "pertaining to the alleged negligence."

Similarly, in this case, Plaintiff's complaint alleges that "[t]he medical care and medical records at issue in this case that are available to Plaintiff after reasonable inquiry have been reviewed by a medical professional who is reasonably expected to qualify as an expert witness under Rule 702 of the North Carolina Rules of Evidence." (Am. Compl. (Doc. 26) at 87.) Plaintiff's complaint further alleges that "[t]he medical professionals include a physician's assistant, practicing as such in a jail; a doctor of pharmacy practicing as such in Winston Salem, North Carolina; and, a registered nurse practicing as such in High Point, North Carolina." Id. Because

Plaintiff's 9(j) certification alleges that both the medical care and medical records have been reviewed by medical professionals reasonably expected to qualify as expert witnesses under Rule 702 of the North Carolina Rules of Evidence, this court is not persuaded that it is compelled to grant Moving Defendants' request for dismissal based on the holding in Alston.

The third case cited by Moving Defendants in support of their position on 9(j) certification is <u>Fintchre v. Duke Univ.</u>, 241 N.C. App. 232, 773 S.E.2d 318 (2015), wherein the plaintiff's complaint and amended complaint alleged the following:

> 82.   Pursuant to North Carolina General Statute Section 1A-1, Rule 9(j), the medical care provided to Plaintiff was reviewed by persons who Plaintiff reasonably expects to qualify as expert witnesses under N.C. R. Evid. 702 who are willing to testify that the medical care at issue in this action failed to comply with the standard of care.

<u>Id.</u> at 242, 773 S.E.2d at 324-25. Like the plaintiff in <u>Vaughan</u>, the <u>Fintchre</u> plaintiff conceded that her 9(j) certification failed to expressly state that the pre-filing evaluation included a review of all medical records pertaining to the alleged negligence, but argued that she had fully complied with the substantive requirements of Rule 9(j), and should therefore be allowed to amend her second complaint. <u>Id.</u> at 240, 773 S.E.2d

at 323. Although the primary issue before the court was "whether the trial court should have granted plaintiff's motion to amend the second complaint," the court disagreed with the plaintiff's position on the certification and found that the 9(j) certification was not valid because it "failed to allege that a person reasonably expected to qualify as an expert had reviewed all available medical records pertaining to the alleged negligence." Id. at 241-42, 773 S.E.2d at 324-25.

Again like the plaintiff in Vaughan, the Fintchre plaintiff completely omitted the additional requirement of certifying the review of medical records. Because Plaintiff in this case certified that both the medical care and medical records had been reviewed by a medical professional who is reasonably expected to qualify as an expert witness, this court is not persuaded that Fintchre requires a dismissal of Plaintiff's medical malpractice claims.[5]

### B.   Rule 9(j) 120-day Extension

For medical malpractice cases, in addition to the 9(j) certification, Rule 9(j) also provides that

---

[5] Because this court finds that a proper 9(j) certification was filed pursuant to Rule 9(j)(1), it is not necessary for this court to determine, at this point, whether Plaintiff's Complaint also "alleges facts establishing negligence under the existing common-law doctrine of res ipsa loquitur" pursuant to Rule 9(j)(3).

Upon motion by the complainant prior to the expiration
of the applicable statute of limitations, a resident
judge of the superior court for a judicial district in
which venue for the cause of action is appropriate . .
. may allow a motion to extend the statute of
limitations for a period not to exceed 120 days to
file a complaint in a medical malpractice action in
order to comply with this Rule, upon a determination
that good cause exists for the granting of the motion
and that the ends of justice would be served by an
extension.

N.C. Gen. Stat. § 1A-1, Rule 9(j). The North Carolina Supreme

Court has held that "once a party receives and exhausts the 120-

day extension of time in order to comply with Rule 9(j)'s expert

certification requirement, the party cannot amend a medical

malpractice complaint to include expert certification. . . .

Rule 9(j) expert review must take place before the filing of the

complaint." Thigpen, 355 N.C. at 205, 558 S.E.2d at 167. The

Court reasoned that "[a]llowing a plaintiff to file a medical

malpractice complaint and to then wait until after the filing to

have the allegations reviewed by an expert would pervert the

purpose of Rule 9(j)." Id. at 204, 558 S.E.2d at 166-67.

In Thigpen, prior to filing any complaint, the plaintiff

requested and received the 120-day extension to comply with the

9(j) certification requirement. Id. at 200, 558 S.E.2d at 165.

Before the expiration of the extension, the plaintiff filed a

medical malpractice complaint, but did not include a proper 9(j)

certification. Id. Six days later, after the expiration of the

extension and statute of limitations, the plaintiff filed an amended complaint that included the 9(j) certification. Id. The Court found that because the plaintiff exhausted the 120-day extension and failed to file an appropriate 9(j) certification within that time, the complaint was properly dismissed. Id. at 205, 558 S.E.2d at 167.

In a slightly different case, the plaintiff in Brown v. Kindred Nursing Ctrs. E., L.L.C. filed a medical malpractice complaint without a 9(j) certification. 364 N.C. 76, 78, 692 S.E.2d 87, 88 (2010). Two days later, the plaintiff filed a motion requesting the 120-day extension, which was granted. Id. Within the 120-day extension timeframe, the plaintiff filed an amended complaint with the proper 9(j) certification. Id. at 78-79, 692 S.E.2d at 88-89. In finding that the complaint should have been dismissed, the Court stated that instead of moving for the 120-day extension to locate a certifying expert before filing the complaint, the "plaintiff alleged malpractice first and then sought to secure a certifying expert. This is the exact course of conduct the legislature sought to avoid in enacting Rule 9(j)." Id. at 80, 692 S.E.2d at 90. Because the plaintiff had already filed a complaint, the trial court had no authority to grant the request for the 120-day extension. Id. at 80-81, 692 S.E.2d at 90. The Court concluded that the 120-day extension

"is for the limited purpose of filing a complaint. . . . [It is not] to locate a certifying expert, add new defendants, and amend a defective pleading." Id. at 84, 692 S.E.2d at 92.

The North Carolina court of appeals has interpreted this holding to mean that it prevents a plaintiff from using the 120-day extension to locate a certifying expert only if he has already filed a defective complaint prior to obtaining the extension. See Alston, 781 S.E.2d at 309 (stating that the Rule 9(j) 120-day extension "provides an avenue to extend the statute of limitations in order to provide additional time, if needed, to meet the expert review requirement," but that the extension "may not be used to amend a previously filed complaint").

The facts in this case differ somewhat from both Thigpen and Kindred Nursing. Here, prior to filing a complaint, Plaintiff moved for a 20-day extension pursuant to Rule 3 of the North Carolina Rules of Civil Procedure for claims "based upon state and federal constitutional law, statutory law, and common law, for . . . personal injuries and disability [Plaintiff] sustained as a result of the intentional and negligent acts and omissions, and defective policies, procedures and protocols of Defendants." (Petition for Removal, Ex. B (Doc. 1-2) at 2.) That same day, Plaintiff moved for the 120-day extension under Rule 9(j) claiming "Plaintiff did not receive suitable medical care

or attention, and has suffered catastrophic injuries as a proximate result." (Petition for Removal, Ex. C (Doc. 1-3) at 2.) Within the 20-day extension under Rule 3, Plaintiff filed the original Complaint, and within the 120-day extension under Rule 9(j), Plaintiff filed the Amended Complaint, which included a medical malpractice claim and a 9(j) certification. (Compl. (Doc. 23); Am. Compl. (Doc. 26).)

Moving Defendants argue that Plaintiff's original Complaint alleged claims "sounding in medical malpractice" and, therefore, required a 9(j) certification. (Moving Defs.' Br. (Doc. 64) at 13-17.) Moving Defendants further argue that, based on the cases cited above, because the original Complaint did not have a 9(j) certification, Plaintiff improperly used the 120-day extension to amend his original Complaint in an attempt to comply with Rule 9(j), and therefore, this court should dismiss Plaintiff's claims for negligent supervision, negligence, and medical malpractice. (Id.) In opposition, Plaintiff asserts that his original Complaint did not include claims for medical malpractice, only ordinary negligence, thus a 9(j) certification was not required. (Doc. 75 at 12.) Plaintiff asserts that he alleged claims of ordinary negligence for administrative and management deficiencies based on allegations that "defendants deliberately and maliciously established policies which deprive

inmates of care" and not on "allegations regarding violations of the standard of care." (Id. at 13-14.)

Rule 9(j) relates to "[a]ny complaint alleging medical malpractice by a health care provider pursuant to G.S. 90-21.11(2)a. in failing to comply with the applicable standard of care under G.S. 90-21.12." N.C. Gen. Stat. § 1A-1, Rule 9(j). Section 90-21.11 of the North Carolina General Statutes defines a "[m]edical malpractice action" as "[a] civil action for damages for personal injury or death arising out of the furnishing or failure to furnish professional services in the performance of medical, dental, or other health care by a health care provider." N.C. Gen. Stat. § 90-21.11(2)(a). "Professional services" has been defined by the North Carolina court of appeals as "'an act or service arising out of a vocation, calling, occupation, or employment involving specialized knowledge, labor, or skill, and the labor or skill involved is predominantly mental or intellectual, rather than physical or manual.'" Gause v. New Hanover Reg'l Med. Ctr., 795 S.E.2d 411, 415 (N.C. Ct. App. 2016) (quoting Sturgill v. Ashe Mem'l Hosp., Inc., 186 N.C. App. 624, 628, 652 S.E.2d 302, 305 (2007)). The North Carolina Court of Appeals has further discussed the distinction between ordinary negligence and medical malpractice in the context of corporate negligence stating:

> [C]orporate negligence actions brought against a
> hospital which pertain to clinical patient care
> constitute medical malpractice actions; however, where
> the corporate negligence claim arises out of policy,
> management or administrative decisions, such as
> granting or continuing hospital privileges, failing to
> monitor or oversee performance of the physicians,
> credentialing, and failing to follow hospital
> policies, the claim is instead derived from ordinary
> negligence principles.

Estate of Waters v. Jarman, 144 N.C. App. 98, 103, 547 S.E.2d
142, 145 (2001).

Plaintiff's case before the court is distinguishable from
the cases cited by Moving Defendants and Plaintiff. The Sturgill
case cited by Moving Defendants on this issue involves claims
regarding a single failure or event of alleged negligent medical
treatment of the plaintiff. Cases cited by Plaintiff involve
issues of violations of hospital rules or activities that were
predominately physical or manual. See, e.g., Norris v. Rowan
Mem'l Hosp., Inc., 21 N.C. App. 623, 623, 205 S.E.2d 345, 346
(1974); Lewis v. Setty, 130 N.C. App. 606, 607, 503 S.E.2d 673
(1998). This case however, deals with multiple allegations
involving clinical patient care; policy, management, and
administrative decisions; as well as other claims. Furthermore,
the North Carolina courts have not discussed the interplay of
Rule 3 and Rule 9(j) in a case involving claims for both medical
malpractice and ordinary negligence such as the one before this

court. However, the court of appeals did address the interplay of the two rules in a different situation.

In Carlton v. Melvin, 205 N.C. App. 690, 697 S.E.2d 360 (2010), the court was presented with a plaintiff attempting "to extend the statute of limitations by a total of 140 days, using both Rule 9(j) and Rule 3." Id. at 693, 697 S.E.2d at 363. In Carlton, the plaintiffs received the 120-day extension under Rule 9(j). Id. at 691, 697 S.E.2d at 362. On the last day of the 120-day extension, rather than file a complaint, the plaintiffs issued a summons and moved for a 20-day extension under Rule 3. Id. On the last day of the 20-day extension, the plaintiffs filed a complaint for wrongful death and negligent infliction of emotional distress. Id. The court of appeals concluded that the plaintiffs were barred from a Rule 3 extension after already obtaining a Rule 9(j) extension and that the wrongful death claim was appropriately dismissed. In citing the North Carolina Supreme Court, the Carlton court noted that:

> [w]here there is one statute dealing with a subject in
> general and comprehensive terms, and another dealing
> with a part of the same subject in a more minute and
> definite way, the two should be read together and
> harmonized, if possible, with a view to giving effect
> to a consistent legislative policy; but, to the extent
> of any necessary repugnancy between them, the special
> statute, or the one dealing with the common subject
> matter in a minute way, will prevail over the general
> statute . . . unless it appears that the legislature
> intended to make the general act controlling[.]

Id. at 695, 697 S.E.2d at 364 (quoting Nat'l Food Stores v. N.C. Bd. of Alcoholic Control, 268 N.C. 624, 628–29, 151 S.E.2d 582, 586 (1966)). The Carlton court concluded that "the legislature intended Rule 9(j) to provide a comprehensive framework for the 'initiation' of medical malpractice actions," and found that the plaintiffs could not toll or further extend the statute of limitations under Rule 3, and thus were required to file a complaint within the 120-day extension. Id. at 695-96, 697 S.E.2d at 364.

As discussed above, in this case, Plaintiff filed for an extension under both Rule 3 and Rule 9(j) on the same day. Pursuant to his Rule 3 motion, Plaintiff was granted an extension to and including November 26, 2015. (Petition for Removal, Ex. B (Doc. 1-2) at 2.) Pursuant to his Rule 9(j) motion, Plaintiff was granted an extension to and including March 4, 2016, which would have been 119 days from the date of both motions. (Petition for Removal, Ex. C (Doc. 1-3) at 2.) Plaintiff did not seek to extend the statute of limitations for an additional 20 days after the Rule 9(j) extension or an additional 120 days after the Rule 3 extension. Plaintiff filed his original Complaint and Amended Complaint within that 119 days.

It appears to this court that Plaintiff sought a Rule 3 extension for claims based on "the intentional and negligent acts and omissions, and defective policies, procedures and protocols of Defendants," and within the 20-day extension filed his original Complaint on November 25, 2015, asserting claims of negligent administration and systemic failures under statutory law and common law. (Petition for Removal, Ex. B (Doc. 1-2) at 2; Compl. (Doc. 23).) At the same time, Plaintiff also sought a Rule 9(j) extension for medical malpractice claims based on the lack of "suitable medical care or attention" provided to him, and within 120 days filed his Amended Complaint on March 3, 2016, asserting medical malpractice claims and including a 9(j) certification. (Petition for Removal, Ex. C (Doc. 1-3) at 2; Am. Compl. (Doc. 26).) This court does not find that Plaintiff improperly used the 120-day extension to amend a defective medical malpractice complaint, and therefore, denies Moving Defendants' motion to dismiss on this basis.[6] Cf. Williams v. Haigwood, No. 5:08-CT-3138-BO, 2012 WL 4483883, at *7-8 (E.D.N.C. Sept. 27, 2012) (unpublished) (denying motion to

---

[6] This court notes that "if discovery subsequently establishes that the [9(j) certification] statement is not supported by the facts, then dismissal" will be appropriate. Ratledge v. Perdue, 239 N.C. App. 377, 379, 773 S.E.2d 315, 317 (2015).

dismiss and finding plaintiff was not curing a defect in the
original complaint which alleged a 42 U.S.C. § 1983 civil rights
claim and a general state law negligence claim – neither of
which require a 9(j) certification – and the amended complaint
added a medical negligence claim with a 9(j) certification).

### C. Claims for False Imprisonment, Torture and Intentional Infliction of Emotional Distress

Moving Defendants argue that because "Plaintiff did not
allege his claims for False Imprisonment (11th Claim) and
Torture and Negligent Infliction of Emotional Distress (12th
Claim) against specific defendants, these claims should be
dismissed." (Moving Defs.' Br. (Doc. 64) at 19.) In their Reply,
Moving Defendants argue that because Plaintiff failed to
identify specific conduct as to any of the Defendants in these
claims, Moving Defendants are prevented from "knowing what
claims they must defend against and what specific conduct is
alleged against them." (Doc. 77 at 8.)

The cases cited by Moving Defendants, two Tenth Circuit
cases and two North Carolina district court cases, do not
persuade this court that Plaintiff's 11th and 12th claims should
be dismissed at this point in the litigation. These cases relied
upon by Moving Defendants concluded that the plaintiffs relied
on generalized or conclusory allegations related to "defendants"

generically without providing a basis to determine which claims are alleged against each defendant. Boykin Anchor Co. v. AT&T Corp., No. 5:10-CV-591-FL, 2011 WL 1456388, at *4 (E.D.N.C. Apr. 14, 2011) (concluding the plaintiff had to identify specific conduct taken by each defendant and could not rely on generalized and conclusory allegations relating to conduct of "all defendants" to hold a parent corporation liable); Maisha v. Univ. of N.C., No. 1:12-CV-371, 2013 WL 1232947, at *6 (M.D.N.C. Mar. 27, 2013), aff'd, 641 F. App'x 246 (4th Cir. 2016) (finding plaintiff made no specific allegations as to certain individual defendants that would give rise to a claim for relief); Robbins v. Oklahoma, 519 F.3d 1242, 1250 (10th Cir. 2008) (holding that where defendants included a government agency and government actors sued in their individual capacities the complaint should make clear who is alleged to have done what, "to provide each individual with fair notice as to the basis of the claims against him or her, as distinguished from collective actions against the state"); Bryson v. Gonzales, 534 F.3d 1282, 1290 (10th Cir. 2008) (stating that conclusory allegations that simply name the "Defendants" generically are not helpful in figuring out what facts the plaintiff means to allege about the defendant's conduct). Although this court recognizes that there are instances where the factual detail in a complaint is too

generalized or conclusory to provide notice of the claim to which the defendant is entitled, that is not the case here. Plaintiff's complaint, taken as a whole, provides Moving Defendants sufficient notice as to the basis of the claims pled against them, and this court will allow these claims to go forward, without prejudice to reconsidering the sufficiency of the claims at summary judgment.

**IV.    CONCLUSION**

For the reasons set forth herein, **IT IS HEREBY ORDERED** that the Motion for Partial Judgment on the Pleadings filed by Moving Defendants Southern Health Partners, Inc., Jason Junkins, Sandra Hunt, Fran Jackson, and Manuel Maldonado (Doc. 63) is **DENIED.**

**IT IS FURTHER ORDERED** that Plaintiff's Contingent Motion (Doc. 79) is **DENIED AS MOOT.**

This the 20th day of September, 2017.

_____
United States District Judge