IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

DAVID RAY GUNTER,                )
                                 )
            Plaintiff,           )
                                 )
    v.                           )        1:16CV262
                                 )
SOUTHERN HEALTH PARTNERS, INC.,  )
et al.,                          )
            Defendants.          )


<u>**MEMORANDUM OPINION AND ORDER**</u>

**OSTEEN, JR., District Judge**

Presently before this court is a Motion for Summary Judgment filed by Defendants Davie County, Andy Stokes, Cameron Sloan, Stokes County, Mike Marshall, Eric Cone, Western Surety Company, and Ohio Casualty Company (collectively, the "Public Defendants"), (Doc. 125), to which Plaintiff has responded, (Doc. 138), and Public Defendants have replied, (Doc. 141).

Further, Plaintiff has filed a Surreply to Public Defendants' Motion for Summary Judgment. (Doc. 149.) Public Defendants have filed a Motion to Strike Plaintiff's Surreply, (Doc. 150), to which Plaintiff has responded, (Doc. 160), and Public Defendants have replied, (Doc. 162).

Finally, Public Defendants have filed a Motion for Expedited Ruling or, Alternatively, for Continuance of Trial or

Enlargement of Time in which to Complete Final Pretrial Preparations. (Doc. 147.) Plaintiff did not file a reply. These motions are ripe for adjudication.

For the reasons stated herein, this court will grant Public Defendants' Motion for Summary Judgment. (Doc. 125.) This court will deny as moot Public Defendants' Motion for Expedited Ruling, (Doc. 147), and Motion to Strike, (Doc. 150).

I. **FACTUAL AND PROCEDURAL BACKGROUND**

A. **Parties**

Plaintiff was incarcerated at the Davie County and Stokes County jails over fourteen consecutive days in November 2012. (Pub. Defs.' Mem. of Law. in Supp. of Mot. for Summ. J. ("Pub. Defs.' Br.") (Doc. 126) at 2.) Defendants Davie County and Stokes County are political subdivisions of the State of North Carolina. (Second Amended Complaint ("Second Am. Compl.") (Doc. 57) ¶¶ 6, 10.) Defendant Andy Stokes is Sheriff of Davie County. (Id. ¶ 8.) Defendant Sloan was appointed by Defendant Stokes to be responsible for operations of the Davie County Local Confinement Facility. (Id. ¶ 9.) Defendant Marshall is Sheriff of Stokes County. (Id. ¶ 12.) Defendant Western Surety Company is the surety for the Sheriff's Bond required of Defendant Stokes. (Id. ¶ 17.) Defendant Ohio Casualty Company is surety

for the Sheriff's Bond required of Defendant Marshall. (Id. ¶ 16.)

**B.    Procedural History**

Plaintiff filed his original Complaint in Randolph County Superior Court of the State of North Carolina on November 25, 2015, and filed an Amended Complaint as of right on March 3, 2016. (Doc. 1-11; Doc. 26.) Public Defendants removed the case to this court on April 1, 2016. (Doc. 1 at 1.) Public Defendants answered Plaintiff's Amended Complaint on April 8, 2016. (Doc. 33.) After obtaining leave from this court, (Doc. 56), Plaintiff filed a Second Amended Complaint in this court on December 27, 2016, (Doc. 57). Public Defendants answered Plaintiff's Second Amended Complaint on January 5, 2017. (Doc. 59.) This court dismissed the Davie County Board of Commissioners and the Stokes County Board of Commissioners as defendants on March 22, 2017. (Doc. 70.) On November 2, 2018, Plaintiff voluntarily dismissed Wendell Sain, another defendant in this action. (Doc. 96.)

On July 6, 2020, Public Defendants filed the instant Motion and Memorandum for Summary Judgment, (Docs. 125, 126). Plaintiff filed a response on July 30, 2020, (Pl.'s Mem. of Law in Opp'n to Mot. for Summ. J. ("Pl.'s Resp.") (Doc. 138)), and Public Defendants filed a Reply on August 5, 2020, (Reply of Pub.

- 3 -

Defendants in Supp. of Mot. for Summ. J. ("Pub. Defs.' Reply") (Doc. 141)).

On August 18, 2020, Public Defendants filed a Motion for Expedited Ruling or, Alternatively, for Continuance of Trial or Enlargement of Time in which to Complete Final Pretrial Preparations, (Doc. 147), and Memorandum, (Doc. 148). Plaintiff took no position as to the motion but advised Public Defendants and the court that Plaintiff intended to file a Surreply in opposition to Public Defendants' Motion for Summary Judgment. (Doc. 147 at 2.)

On August 24, 2020, Plaintiff filed a Surreply to Public Defendants' Motion for Summary Judgment. (Surreply Br. to Pub. Defs.' Mot. for Summ. J. ("Pl.'s Surreply") (Doc. 149).) Public Defendants filed a Motion to Strike Plaintiff's Surreply on August 25, 2020, (Doc. 150), and a Memorandum of Law in Support of the Motion to Strike, ("Pub. Defs.' Mot. to Strike Br.") (Doc. 151)). Plaintiff responded on September 15, 2020, (Doc. 160; Pl.'s Br. in Opp'n to Mot. to Strike ("Pl.'s Resp. to Mot. to Strike") (Doc. 161)), and Public Defendants replied on September 28, 2020, (Doc. 162).

On February 23, 2021, Public Defendants filed a Motion to Continue Trial, (Doc. 165), to which Plaintiff responded in opposition on March 1, 2021, (Doc. 168). On March 3, 2021, this

- 4 -

court denied Public Defendants' motion as moot, as "[t]his court anticipate[d] issuing its ruling on the pending summary judgment motion[] in the near future." (Doc. 170 at 1.) This court ordered the parties to "stand down from the presently scheduled trial preparation deadlines," (id.), and ordered the Clerk to set a scheduling and status conference in this matter after April 1, 2021. (Id.) Moreover, this court ordered that the trial not commence on April 5, 2021, as scheduled, but instead, for a date at least 30 days thereafter. (Id.)

### C.   **Factual Background**

The majority of facts are not disputed, and any material factual disputes will be specifically addressed in the relevant analysis. The facts described in this summary are taken in a light most favorable to Plaintiff. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986).

When Plaintiff was fifteen years old, he underwent surgery to install a mechanical heart valve. (Attachment 7 – Excerpts from the Dep. of David Ray Gunter ("Gunter Dep.") (Doc. 126-9) at 4.)[1] He was placed on Warfarin, which is also known as Coumadin, a prescription blood thinner. (Id.)

---

[1]   All citations in this Memorandum Opinion and Order to documents filed with the court refer to the page numbers located at the bottom right-hand corner of the documents as they appear on CM/ECF.

Plaintiff was arrested in Forsyth County on November 6, 2012, (id. at 8), pursuant to a bench warrant for his failure to appear in court in Davie County, (see id. at 5-7). After spending the night in the Forsyth County Jail, Plaintiff was transferred to the Davie County Detention Center ("DCDC") on November 7, 2012. (Id. at 8-9.)

Plaintiff was screened upon his arrival at DCDC by Fran Jackson, (id. at 10), a nurse and the Davie County Medical Team Administrator for Southern Health Partners, Inc. ("SHP")[2], the contracted medical care provider for both DCDC and the Stokes County Detention Center ("SCDC"). (Pl.'s Resp. (Doc. 138) Exs. 1, 2.) Plaintiff told Jackson that he would be released later that day and did not want her to contact his medical care providers. (Gunter Dep. (Doc. 126-9) at 14; Attachment 8 - Excerpts from the Dep. of Francessia Robinson Jackson ("Jackson Dep.") (Doc. 126-10) at 4-6.) Plaintiff told Defendant Jackson that he had heart problems, a mechanical heart valve, that he took Coumadin, which she noted in his medical record. (Gunter Dep. (Doc. 126-9) at 11-14.) Plaintiff said he would have his

---

[2] Both parties address this fact as though it is not disputed, (see Pub. Defs.' Br. (Doc. 126) at 1, 4; Pl.'s Resp. (Doc. 138) at 4-5), although there is no citation to an affidavit, deposition, or other necessary evidentiary foundation as required by Rule 56. Nevertheless, in the absence of any dispute or objection, the court will treat the fact as undisputed.

medications brought to the jail if he was not released. (Jackson Dep. (Doc. 126-10) at 4.)

Plaintiff was not released on November 7, 2012, and on November 8, 2012, Jackson contacted Plaintiff's primary care physician and pharmacy to verify the information Plaintiff had provided about his medication and conditions. (Id. at 4, 6.) Defendant Jackson's notes in the medical records indicate that Plaintiff last filled his prescription for 1 mg of Coumadin on October 19, 2012, and that he did not have any refills remaining. (Id. at 4.) Defendant Jackson contacted Maplewood Family Practice, which Plaintiff had indicated was where his primary care physician worked. (Id.) Maplewood Family Practice indicated that they had last seen Plaintiff in June 2012 for a sick visit, but they had last managed Plaintiff's INR levels in 2010. (Id.) Defendant Jackson's notes do not indicate that she was aware of any medical practitioner who had been managing Plaintiff's Coumadin medication between 2010 and 2012. (Id.)

On November 8, 2012, following her conversation with Plaintiff, Jackson consulted with Manuel Maldonado, (id. at 14), a Physician's Assistant with SHP who oversaw medical care at

both DCDC and SCDC.[3] Maldonado ordered a prescription for 5 mg of Coumadin and for Plaintiff to have an INR check on November 13, 2012. (Attachment 10 - Excerpts from the Dep. of Manuel F. Maldonado ("Maldonado Dep.") (Doc. 126-12) at 4-5.) Plaintiff received 5 mg of Coumadin each day on November 9 through November 14, 2012, but not on November 7 or 8.[4]

On Tuesday, November 13, 2012, Plaintiff underwent an INR test, which showed that Plaintiff's INR levels were sub-therapeutic at 1.07. (Id. at 6.) Maldonado ordered that Plaintiff's dosage be increased to 7.5 mg for November 15, November 17, and November 19, and remain at 5 mg on November 13, November 14, November 16, and November 18. (Id. at 6-7.) Jackson gave Plaintiff his medication according to this schedule on November 13-15.[5]

On November 16, 2012, a Friday afternoon, Plaintiff was transferred to SCDC. (Attachment 9 - Excerpts from the Deposition of Sandra Hunt ("Hunt Dep.") (Doc. 126-11) at 4, 6,

---

[3] As with certain other facts, the parties treat this fact as undisputed, (see Pub. Defs.' Br. (Doc. 126) at 5-6; Pl.'s Resp. (Doc. 138) at 3), and the court will, as well.

[4] As with certain other facts, the parties treat this fact as undisputed, (see Pub. Defs.' Br. (Doc. 126) at 5; Pl.'s Resp. (Doc. 138) at 3), and the court will, as well.

[5] As with certain other facts, the parties treat this fact as undisputed, (see Pub. Defs.' Br. (Doc. 126) at 5; Pl.'s Resp. (Doc. 138) at 3), and the court will, as well.

8.) Prior to the transfer, Jackson completed a transfer form, summarizing Plaintiff's medical condition and indicating the medication plan. (Jackson Dep. (Doc. 126-10) at 7.) Plaintiff arrived at the jail after Sandra Hunt, a nurse and the Mechanical Team Administrator for SHP, had left for the weekend. (Hunt Dep. (Doc. 126-11) at 4-5.) In accordance with jail policy, a detention officer telephoned Hunt at home to notify her of Plaintiff's arrival and to answer her questions regarding Plaintiff's medication. (Id. at 5-6.) Hunt did not direct the SCDC detention staff to dispense any medication to Plaintiff, and without specific authorization from Hunt, SCDC staff were prohibited from dispensing medication to Plaintiff. (Id. at 9-10.) Plaintiff received Coumadin medication on November 19 and November 20. (Id. at 16.) Plaintiff was released from SCDC on Wednesday, November 21, 2012. (Id.)

Plaintiff did not interact with Defendants Stokes or Sloan while he was detained in the DCDC, or with Defendants Marshall or Cone while detained in the SCDC. (Gunter Dep. (Doc. 126-9) at 32-34, 39-40.) Defendant Stokes, Marshall, Cone, and Sloan did not have any personal knowledge of Plaintiff or any reason to believe that Plaintiff was not receiving adequate medical care. (Doc. 126-1 ¶¶ 7, 14; Doc. 126-2 ¶ 14; Doc. 126-3 ¶ 8; Doc. 126-4 ¶¶ 4-5.) Plaintiff did not submit any grievance forms or

- 9 -

pursue any administrative remedies while he was detained in the DCDC. (Gunter Dep. (Doc. 126-9) at 35.) While he was detained in the SCDC, Plaintiff did not complain to anyone about his medical care or medication. (Id. at 36.) On November 19, 2012, Plaintiff submitted a single grievance form to the staff at SCDC, in which he wrote that he had a heart condition, and he would like to move to a lower bunk. (Gunter Dep. (Doc. 126-9) at 46-49.) Plaintiff's request was granted. (Id.)

On November 29, 2012, Plaintiff was admitted to Wake Forest Baptist Medical Center for a blood clot. (Doc. 124-17 at 2.) Plaintiff was discharged from the hospital on December 11, 2012. (Id. at 4.) At that time, the clot had been surgically removed, his organs were viable, and there was no medical need for a bowel resection. (Id. at 3-4.) On January 18, 2013, Plaintiff was diagnosed with a second blood clot, which required surgeons to resection part of Plaintiff's bowel. (Second Am. Compl. (Doc. 57) ¶¶ 118-19.)

## II.  **STANDARD OF REVIEW**

Summary judgment is appropriate when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); see Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986). This court's summary judgment inquiry is whether the evidence "is so one-

- 10 -

sided that one party must prevail as a matter of law." <u>Anderson</u> <u>v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 252 (1986). The moving party bears the initial burden of demonstrating "that there is an absence of evidence to support the nonmoving party's case." <u>Celotex Corp.</u>, 477 U.S. at 325. If the "moving party discharges its burden . . . , the nonmoving party must come forward with specific facts showing that there is a genuine issue for trial." <u>McLean v. Patten Cmtys., Inc.</u>, 332 F.3d 714, 718-19 (4th Cir. 2003) (citing <u>Matsushita Elec. Indus. Co.</u>, 475 U.S. at 586-87). Summary judgment should be granted "unless a reasonable jury could return a verdict in favor of the nonmoving party on the evidence presented." <u>Id.</u> at 719 (citing <u>Liberty Lobby</u>, 477 U.S. at 247-48).

When considering a motion for summary judgment, courts must "construe the evidence in the light most favorable to . . . the non-moving party. [Courts] do not weigh the evidence or make credibility determinations." <u>Wilson v. Prince George's Cnty.</u>, 893 F.3d 213, 218-19 (4th Cir. 2018) (internal citations omitted).

## III. <u>ANALYSIS</u>

### A. <u>Public Defendants' Motion to Strike</u>

As an initial matter, this court considers Public Defendants' Motion to Strike Plaintiff's Surreply Brief to

- 11 -

Public Defendants' Motion for Summary Judgment. (Doc. 150; Pl.'s Surreply (Doc. 149).) Public Defendants argue that courts in this district "generally 'allow a party to file a surreply only when fairness dictates based on new arguments raised in the previous reply,'" (Pub. Defs.' Mot. to Strike Br. (Doc. 151) at 4 (citing DiPaulo v. Potter, 733 F. Supp. 2d 666, 670 (M.D.N.C. 2010)). Public Defendants argue that Plaintiff "neither sought nor obtained leave from the Court to file his Surreply," nor has he "shown, nor even attempted to show, that based on new arguments raised in the previous reply, fairness dictates that he be allowed to file a surreply." (Id. (internal quotations omitted).)

Plaintiff argues that because Public Defendants' opening brief addresses municipal liability under the standard established in Monell v. Dep't of Soc. Servs., 436 U.S. 658 (1978) in a "cursory and superficial way, merely offering conclusory statements and essentially no analysis," (Pl.'s Resp. to Mot. to Strike (Doc. 161) at 2), Public Defendants' reply brief is the first time Public Defendants address Plaintiff's argument that "Public Defendants' policies, customs and practices caused or contributed to the failure to administer medication to plaintiff as prescribed." (Id. at 3.) Plaintiff argues that his Surreply Brief "primarily responds" to Public

- 12 -

Defendants' "new" municipal liability arguments, and thus, the brief was "filed in harmony with the purposes recognized by this Court as the proper function of a Surreply Brief." (Id.)

This court disagrees. The Rules of Practice and Procedure of the United States District Court for the Middle District of North Carolina ("Local Rules") allow only for the filing of a motion, a single response to a motion, and a single reply brief, see LR7.3, including Motions for Summary Judgment, see LR56.1(d).[6] Although courts in this district "[g]enerally allow a party to file a Surreply only when fairness dictates based on new arguments raised in the previous reply," DiPaulo, 733 F. Supp. 2d at 670, this court finds Plaintiff's arguments that his brief responds to new arguments raised in Public Defendants' Reply Brief unpersuasive.

First, contrary to Plaintiff's assertions, this court finds that Public Defendants did raise municipal liability issues under Monell in their opening brief. In a section of their Brief

---

[6] The Local Rules address Surreply Briefs in only one instance, stating that, "[i]f an evidentiary objection is raised by the moving party in its reply memorandum, the non-moving party may file a surreply memorandum pursuant to [Local Rule 7.6] within seven (7) days addressing only the evidentiary objection." LR7.6 (emphasis added). The parties agree that this exception does not apply in this matter. (See Pub. Defs.' Mot. to Strike Br. (Doc. 151); Pl.'s Resp. to Mot. to Strike (Doc. 161).)

entitled, "The Moving Defendants are Entitled to Summary Judgment as to Any Section 1983 Municipal Liability Claims," Public Defendants stated the law regarding municipal liability and provided an application of the evidence in this matter to the law, including citing to Monell. (Pub. Defs.' Br. (Doc. 126) at 15-16.) This court finds that Public Defendants' argument was sufficient for them to meet their initial burden of demonstrating "that there is an absence of evidence to support the nonmoving party's case," Celotex Corp., 477 U.S. at 325, and to provide notice to Plaintiff of their arguments.

Plaintiff may characterize this section of Public Defendants' Brief as a "cursory," "superficial," "conclusory," discussion of Monell and municipal liability with "essentially no analysis," (Pl.'s Resp. to Mot. to Strike (Doc. 161) at 2), but Plaintiff was able to respond, generating more than five pages of analysis describing law and evidence to support his position on municipal liability, (see Pl.'s Resp. (Doc. 138) at 5-11, 17). For this reason, this court finds that Plaintiff understood that Public Defendants had raised Monell and municipal liability in their opening brief, and thus, it was not a new argument when Public Defendants addressed it for a second time in their Reply Brief.

- 14 -

Moreover, this court finds that Public Defendants'
discussion of municipal liability under Monell in their Reply
Brief is consistent with the Local Rules, which permit a reply
that "address[es] matters newly raised in [Plaintiff's]
response." LR56.1(e). In a single paragraph in their Reply
Brief, Public Defendants quote factual statements from
Plaintiff's response and briefly offer an argument in reply.
(See Pub. Defs.' Reply (Doc. 141) at 9.) This is the very
purpose of a Reply under the Local Rules. See LR56.1(e). To
allow Plaintiff to file a Surreply in this instance would be to
open the door to an endless barrage of briefing any time a party
exercises their right to file a Reply that conforms to the Local
Rules.

Finally, as Plaintiff recognizes, Plaintiff's Surreply
Brief does more than respond to any allegedly new municipal
liability arguments raised in Public Defendants' Reply Brief.
(See Pl.'s Resp. to Mot. to Strike (Doc. 161) at 3 ("Plaintiff
primarily responds to the new arguments relating to the Monell
claims, and offers direct authority under North Carolina law
. . . ." (emphasis added)).) In one section, Plaintiff argues
why he believes his claims under N.C. Gen. Stat. § 162-55 are
"viable." (Pl.'s Surreply (Doc. 149) at 7.) In another,
Plaintiff cites two additional North Carolina state court cases

- 15 -

in support of his argument that Public Defendants waived governmental immunity by contracting with SHP. (Id. at 8.) This court does not see a reason why Plaintiff could not have identified these additional authorities prior to submitting his Response, (see Pub. Defs.' Br. (Doc. 126) at 21-23), and Plaintiff does not offer one, (Pl.'s Surreply (Doc. 149) at 8; Pl.'s Resp. to Mot. to Strike (Doc. 161) at 3).[7] If Plaintiff became aware after filing his Response that he had not presented this court with complete case law supporting his position, he should have requested leave of this court to file additional briefing, rather than submitting a Surreply without permission.

For these reasons, this court does not find that "fairness dictates" that Plaintiff be permitted to file a Surreply. See DiPaulo, 733 F. Supp. 2d at 670. Nevertheless, this court has reviewed Plaintiff's Surreply and will decline to consider

---

[7] This court notes, as Public Defendants argue, (Pub. Defs.' Mot. to Strike Br. (Doc. 151) at 4), that Plaintiff's original deadline to file his Response was July 20, 2020, and he failed to comply. (See Text Order 03/23/2020.) On July 23, 2020, Plaintiff filed a Motion for Extension of Time to File Opposition Briefs to Defendants' Motions for Summary Judgment. (Doc. 130.) When this court granted Plaintiff's motion and allowed Plaintiff until July 30, 2020, to file his response, (Doc. 135 at 2), this court noted that Plaintiff had been aware of the deadline for responses to any motions for summary judgment since March 23, 2020, (id. at 1), and of Public Defendants' intent to file a Motion for Summary Judgment since June 25, 2020, (id. at 2). Given this notice, this court finds that Plaintiff had ample time in which to research these legal issues and identify these authorities.

Plaintiff's arguments, as this court will grant Public

Defendants' Motion for Summary Judgment on other grounds and

need not reach the arguments raised in Plaintiff's Surreply. See

discussion <u>infra</u> Section III.B. For this reason, this court will

deny Public Defendants' Motion to Strike, (Doc. 150), as moot.

### B.    <u>Public Defendants' Motion for Summary Judgment</u>

Having considered Public Defendants' Motion to Strike, this

court now considers Public Defendants' Motion for Summary

Judgment. (Doc. 125.)

### 1.    <u>Plaintiff's Claim under 42 U.S.C. § 1983</u>

Public Defendants first move for summary judgment on

Plaintiff's claim under 42 U.S.C. § 1983. (Pub. Defs.' Br. (Doc.

126) at 9-16.)

### a.    <u>Parties' Arguments</u>

Public Defendants argue that Plaintiff's claims "are

premised entirely upon his contention that SHP failed to provide

him with proper medical care" for his mechanical heart valve,

(<u>id.</u> at 10), a contention that Plaintiff does not contest, (<u>see</u>

Pl.'s Resp. (Doc. 138) at 7-9). Public Defendants make several

arguments for why Plaintiff's claim fails. First, Public

Defendants argue that no violation of Plaintiff's constitutional

rights occurred, as "[m]ere negligence or medical malpractice

does not rise to a constitutional violation." (Pub. Defs.' Br.

- 17 -

(Doc. 126) at 10.) Second, they argue that the evidence does not show that Public Defendants acted with deliberate indifference to Plaintiff's constitutional rights. (Id. at 11.) Third, Public Defendants argue that they are entitled to qualified immunity. (Id. at 13.) Fourth, Public Defendants argue that Plaintiff failed to exhaust his administrative remedies before filing suit. (Id. at 13-14.) Fifth, Public Defendants argue that municipal liability bars Plaintiff's claims. (Id. at 15-16.)

In response, Plaintiff argues that "[d]eprivation of coumadin for a day or two is sufficient to create a substantial risk of harm for a patient with a mechanical heart valve," (Pl.'s Resp. (Doc. 138) at 7), such that Public Defendants violated Plaintiff's constitutional rights by failing to provide him with adequate Coumadin therapy, (id. at 7-9). Plaintiff also argues that Defendants Davie County and Stokes County are liable as municipalities because SHP's policies "resulted in [Plaintiff] not receiving doses of his critical anticoagulant medication," (id. at 10), and SHP established medical policy for the Counties and Sheriffs, (id. at 6). Moreover, Plaintiff argues that Defendants Stokes, Sloan, Marshall, and Cone are not entitled to qualified immunity because they have a nondelegable duty to provide medical care to detainees. (See id. at 12.)

- 18 -

Finally, Plaintiff argues that he was not required to exhaust his administrative remedies. (Id. at 13-17.)

### b.  A Reasonable Jury could not find that a Constitutional Violation Occurred

This court finds that there is not a genuine dispute of material fact as to whether a violation of Plaintiff's constitutional rights occurred.

In Estelle v. Gamble, the Supreme Court held that prison officials violate the Eighth Amendment's prohibition against "cruel and unusual punishment" when they are deliberately indifferent to the serious medical needs of their prisoners. 429 U.S. 97, 104-05 (1976). "Pretrial detainees are entitled to at least the same protection under the Fourteenth Amendment as are convicted prisoners under the Eighth Amendment." Young v. City of Mount Ranier, 238 F.3d 567, 575 (4th Cir. 2001) (footnote omitted).

Pretrial detainees alleging they have been subjected to unconstitutional conditions of confinement must satisfy a two-pronged test: First, they must allege that the deprivation alleged was "objectively, sufficiently serious." Scinto v. Stansberry, 841 F.3d 219, 225 (4th Cir. 2016) (citing Farmer v. Brennan, 511 U.S. 825, 834 (1994) (internal quotations omitted)). "To be sufficiently serious, the deprivation must be extreme – meaning that it poses a serious or significant

- 19 -

physical or emotional injury," id. (internal quotations

omitted), and be "so obvious that even a lay person would easily

recognize the necessity for a doctor's attention." Iko v.

Shreve, 535 F.3d 225, 241 (4th Cir. 2008) (internal quotations

omitted).

Second, pretrial detainees must show that prison officials

acted with deliberate indifference, meaning that "the official

knew of and disregarded an excessive risk to inmate health or

safety." Scinto, 841 F.3d at 225 (citing Farmer, 511 U.S. at

837) (internal quotations, and modifications omitted). Prison

officials must have "personal knowledge of and involvement in

the alleged deprivation of [the prisoner's] rights in order to

be liable," as "[t]he doctrine of respondeat superior has no

application" under § 1983. Wright v. Collins, 766 F.2d 841, 849-

50 (4th Cir. 1985) (internal quotations omitted). For example,

in Sosebee v. Murphy, the Fourth Circuit found that prison

guards were deliberately indifferent to an inmate's medical

needs where the record was "replete with evidence from which a

jury could rationally find that the guards on duty were aware of

[the plaintiff's] serious condition and intentionally abstained

from seeking medical help." 797 F.2d 179, 182 (4th Cir. 1986).

This evidence included testimony that prison guards joked about

the plaintiff's visibly poor physical state for several hours

- 20 -

and threatened all prisoners with solitary confinement if they continued to request that the plaintiff receive medical assistance. Id.

Moreover, "an inadvertent failure to provide adequate medical care" does not satisfy the standard, and thus, mere negligence in diagnosis or treatment is insufficient. Estelle, 429 U.S. at 105-06; see also Farmer, 511 U.S. at 835 (holding that deliberate indifference requires a showing of "more than mere negligence," but "is satisfied by something less than acts or omissions for the very purpose of causing harm or with knowledge that harm will result"). "Disagreements between an inmate and a physician over the inmate's proper medical care do not state a § 1983 claim unless exceptional circumstances are alleged." Wright, 766 F.2d at 849. Instead, "officials evince deliberate indifference by acting intentionally to delay or deny the prisoner access to adequate medical care or by ignoring an inmate's known serious medical needs." Sharpe v. S.C. Dep't of Corr., 621 F. App'x 732, 733 (4th Cir. 2015) (citing Estelle, 429 U.S. at 104-05).

For example, in Smith v. Smith, 589 F.3d 736 (4th Cir. 2009), the Fourth Circuit held that a plaintiff had stated a claim for deliberate indifference where the complaint alleged that a nurse had destroyed the order which would have enabled a

patient to receive necessary medical treatment. Id. at 739. By contrast, in Wright, the Fourth Circuit held that, where a doctor and others "provided [the inmate] with medical treatment on numerous occasions," the "allegation that [the inmate's] medical care was inadequate would, at most, constitute a claim of medical malpractice." 766 F.2d at 849.

Even if this court assumes, as Plaintiff argues, that "[d]eprivation of coumadin for a day or two is sufficient to create a substantial risk of harm for a patient with a mechanical heart valve" under the first prong of the analysis for constitutional claims, (see Pl.'s Resp. (Doc. 138) at 7), this court finds that, based on the evidence presented, Plaintiff's evidence does not create a genuine dispute of material fact that Public Defendants were deliberately indifferent to Plaintiff's medical needs.

First, this court finds that Plaintiff received medical treatment from SHP personnel while incarcerated at DCDC and SCDC. (See Pl.'s Resp. (Doc. 138) at 3-4.) Plaintiff was evaluated upon arrival at the DCDC, (see id. at 3), was prescribed Coumadin after he signed a medical authorization, (see id.; Pub. Defs.' Br. (Doc. 126) at 4-5), was transported off-site for medical testing, (Pub. Defs.' Br. (Doc. 126) at 5), and received Coumadin on seven of the nine days he was detained

at the DCDC. (Id.) While at SCDC, Detention Center staff notified Nurse Hunt that Plaintiff had arrived. (Id. at 5-6; Pl.'s Resp. (Doc. 138) at 4.) When Nurse Hunt returned to work on Monday, she provided Coumadin to Plaintiff. (Pub. Defs.' Br. (Doc. 126) at 6.)

Unlike the guards in Sosebee, who "intentionally abstained from seeking medical help" for the inmate, 797 F.2d at 182, or the nurse in Smith, who deliberately prevented the patient from receiving medical treatment, 589 F.3d at 739, there is no evidence on the record that Public Defendants intended to prevent or delay Plaintiff from receiving medical treatment or that Public Defendants ignored his medical needs. That Plaintiff disagrees with the treatment he received or that a different course of treatment might have led to a better medical outcome, (see Pl.'s Resp. (Doc. 138) at 7-8), is not evidence of a subjective intent by Public Defendants to deprive Plaintiff of medical treatment, which is necessary to state a constitutional violation. "Medical malpractice does not become a constitutional violation merely because the victim is a prisoner." Estelle, 429 U.S. at 106.

Second, Plaintiff has not presented evidence that Defendants Sloan, Stokes, Marshall, or Cone had any personal knowledge or involvement regarding Plaintiff's detention or

- 23 -

medical care. (See Pl.'s Resp. (Doc. 138) at 5-17.) Even if the
medical staff were negligent or committed medical malpractice,
Plaintiff's arguments that Public Defendants had a non-delegable
duty to provide medical care to Plaintiff, (id. at 12-13), are,
at best, an argument that Public Defendants are liable under a
respondeat superior theory, which is not permitted in § 1983
claims, Wright, 766 F.2d at 850. In the absence of evidence that
Public Defendants had personal knowledge of Plaintiff's need for
medical treatment, see id., a reasonable jury cannot find that
Public Defendants "knew of and disregarded an excessive risk to
inmate health or safety." Scinto, 841 F.3d at 225 (citing
Farmer, 511 U.S. at 837) (internal quotations and modifications
omitted) (emphasis added).

Finally, contrary to Plaintiff's assertions, (Pl's Resp.
(Doc. 138) at 12), prison officials are entitled to rely on the
opinions, judgment, and expertise of medical personnel in
determining appropriate treatment for inmates because they may
expose themselves to liability if they interfere with medical
personnel's medical judgment. See, e.g., Shakka v. Smith, 71
F.3d 162, 167 (4th Cir. 1995) (finding that, if prison officials
had contradicted the medical professional's instructions, "they
might have incurred liability for interfering with [the
inmate's] treatment"); Miltier v. Beorn, 896 F.2d 848, 854-55

- 24 -

(4th Cir. 1990) (stating that supervisory prison officials are entitled to rely on professional judgment of trained medical personnel and may be found to have been deliberately indifferent by intentionally interfering with a prisoner's medical treatment ordered by medical personnel); Pickens v. Lewis, No. 1:15-cv-275-FDW, 2018 WL 2187051, at *10 (W.D.N.C. May 11, 2018) (holding that prison officials without medical training are "not responsible for determining the course of treatment or for overruling the opinions of those professionals") (internal quotations and citations omitted); Tate v. Alamance Cnty. Jail, No. 1:06CV246, 2007 WL 2156319, at *2 (M.D.N.C. July 26, 2007) ("An officer fulfills his duty by notifying medical personnel. He is not personally responsible to provide medical care."). Plaintiff has not presented evidence that Public Defendants had the medical training necessary to make decisions regarding Plaintiff's care, (see Pl.'s Resp. (Doc. 138) at 4-11), and as such, this court does not find that Public Defendants should have understood whether Plaintiff's medical care was proper or that it would have been appropriate for Public Defendants to intervene in Plaintiff's medical care.

For these reasons, a reasonable jury could not find that Public Defendants violated Plaintiff's constitutional rights,

and this court will grant Public Defendants' Motion for Summary
Judgment as to Plaintiff's § 1983 claims.[8]

### 2. <u>Plaintiff's State Law Claims</u>

#### a. <u>Injunction</u>

Public Defendants move for summary judgment on Plaintiff's
"Injunction" claim. (Pub. Defs.' Br. (Doc. 126) at 16.)
Plaintiff "concedes that since [he] is no longer confined, he
cannot benefit from an injunction" and therefore, he withdraws
his claim. (Pl.'s Resp. (Doc. 138) at 17.) Accordingly, this
court will grant Public Defendants' motion regarding Plaintiff's
claim for an injunction.

#### b. <u>Claim under N.C. Gen. Stat. § 162-55</u>

Public Defendants also move for summary judgment as to
Plaintiff's claim under N.C. Gen. Stat. § 162-55 against
Defendants Stokes, Marshall, Sloan, and Cone. (Pub. Defs.' Br.
(Doc. 126) at 17-18.) The statute states, "[i]f the keeper of a

---

[8] Because questions of qualified immunity and municipal
liability are relevant only where there is a constitutional
violation, see Pearson v. Callahan, 555 U.S. 223, 236 (2009)
(describing the two-part inquiry for qualified immunity claims);
Belcher v. Oliver, 898 F.2d 32, 36 (4th Cir. 1990) (in a
municipal liability case, holding that "[b]ecause it is clear
that there was no constitutional violation we need not reach the
question of whether a municipal policy was responsible for the
officers' actions"), this court declines to consider these
issues. This court will also decline to consider whether
Plaintiff failed to exhaust his administrative remedies. (See
Pub. Defs.' Br. (Doc. 126) at 13-14.)

Case 1:16-cv-00262-WO-JLW   Document 175   Filed 03/15/21   Page 26 of 42

jail shall do, or cause to be done, any wrong or injury to the prisoners committed to his custody, contrary to law, he shall not only pay treble damages to the person injured, but shall be guilty of a Class 1 misdemeanor." N.C. Gen. Stat. § 162-55.

Citing Letchworth v. Gay, 874 F. Supp. 107 (E.D.N.C. 1995), Public Defendants argue that a claimant must establish criminal conduct on the part of the jail keeper in order to recover under the statute, and at worst, any failure by SHP's medical staff to provide Warfarin to Plaintiff "constitutes medical malpractice, not criminal conduct." (Pub. Defs.' Br. (Doc. 126) at 17.) Moreover, Public Defendants argue that Plaintiff's claim fails as a matter of law because "none of the moving defendants engaged in any criminal conduct, nor is there [] any evidence that the moving defendants intended to cause Plaintiff any harm." (Id. at 17-18 (footnote omitted).)

In response, Plaintiff argues that Public Defendants' citation of Letchworth is insufficient, as the facts of the case are "readily, and easily distinguishable from the claims Gunter makes in this cause." (Pl.'s Resp. (Doc. 138) at 18.) Plaintiff further argues that the Letchworth court concluded that the plaintiff had not established that the jailer had acted with the requisite intent for criminal negligence under the statute, and that "[n]umerous federal authorities have equated the federal

threshold for § 1983 violations, deliberate indifference, with criminal negligence." (Id.) Plaintiff argues that he has "proven" in "other sections of [his] Brief" that Public Defendants acted with this intent. (Id.)

There are relatively few reported cases in which North Carolina or Federal courts have interpreted the language of N.C. Gen. Stat. § 162-55. See Letchworth, 874 F. Supp. at 108-09 (explaining that, as of 1995, "this statute has been cited in reported cases only three times" during the statute's "entire two hundred year history"). However, courts interpreting the statute have held that, to be liable for a violation of N.C. Gen. Stat. § 162-55, a jailer must have acted with "criminal negligence," meaning "such recklessness or carelessness, resulting in injury or death, as imports a thoughtless disregard of consequences, or a heedless indifference to the safety and rights of others." See, e.g., Stockton v. Wake Cnty., 173 F. Supp. 3d 292, 319 (E.D.N.C. 2016) (internal quotations omitted); Layman v. Alexander, 294 F. Supp. 2d 784, 796 (W.D.N.C. 2003); Letchworth, 874 F. Supp. at 109. The level of intent for criminal negligence is similar to that for § 1983 actions for deliberate indifference to an inmate's medical needs. Stockton, 173 F. Supp. 3d at 319. ("Thus, while mere negligence is not sufficient to subject a defendant jailer to liability under

- 28 -

§ 162-55, reckless indifference to an inmate's safety, resulting in injury or death, is sufficient.") (internal quotations and citations omitted).

This court finds that the evidence does not create a genuine dispute of material fact that Public Defendants acted with this criminally negligent intent. As this court found in its analysis of Plaintiff's claims under 42 U.S.C. § 1983, SHP medical personnel's actions could be construed, at best, as negligence or medical malpractice, and Public Defendants did not have personal knowledge of Plaintiff or intend to injure him by depriving him of medical care. See discussion supra Section III.B.1. Because "mere negligence is not sufficient to subject a defendant jailer to liability under § 162-55," Stockton, 173 F. Supp. 3d at 319 (internal quotations omitted), a reasonable jury could not find based on the evidence that Public Defendants are liable for a violation of N.C. Gen. Stat. § 162-55. Accordingly, this court will grant Public Defendants' motion for summary judgment as to this claim.

### c. **Negligent Supervision**

Public Defendants also move for summary judgment as to Plaintiff's negligent supervision claim. (Pub. Defs.' Br. (Doc. 126) at 18-19.)

North Carolina recognizes a claim of negligent supervision against an employer where the plaintiff establishes: (1) "the specific negligent act on which the action is founded"; (2) "incompetency, by inherent unfitness or previous specific acts of negligence, from which incompetency may be inferred"; (3) "either actual notice to the master of such unfitness or bad habits, or constructive notice, by showing that the master could have known the facts had he used ordinary care in oversight and supervision"; and (4) "that the injury complained of resulted from the incompetency proved." Medlin v. Bass, 327 N.C. 587, 591, 398 S.E.2d 460, 462 (1990) (internal citations, quotations, and emphasis omitted).

Public Defendants argue that this court should grant summary judgment in favor of Public Defendants because Plaintiff cannot establish the elements of a negligent supervision claim. (Pub. Defs.' Br. (Doc. 126) at 19.) Citing Plaintiff's deposition testimony, Public Defendants argue that all of Plaintiff's claim solely concerns conduct by SHP's medical personnel, and that "Plaintiff readily admits that no member of the detention staff at either the DCDC or the SCDC acted improperly in any way." (Id. at 18 (citing Gunter Dep. (Doc. 126-9) at 36, 39, 41-42).) Public Defendants argue that the SHP personnel were not employees of Public Defendants and that

Plaintiff cannot show evidence that any of the Public Defendants knew or had reason to know that the SHP personnel were incompetent. (Id. at 19.)

In response, Plaintiff argues that "[a] contractor has a duty to supervise its independent contractors," (Pl.'s Resp. (Doc. 138) at 18), and that "[e]ven taking as true that the Public Defendants had not experienced imcompetence [sic] of SHP in their facilities prior to Mr. Gunter's injuries," there are "hundreds of civil actions for malpractice and negligent medical care which have been filed against SHP throughout its operating areas" and these "constitute[] sufficient notice to the Public Defendants" of SHP personnel's negligence, (id. at 18-19). Plaintiff further argues that "relying blindly on SHP meant that sooner or later [negligence] would happen at [DCDC and SCDC] if they took no steps to monitor and supervise SHP, which they admit that they did not do." (Id. at 19.)

This court finds Plaintiff has not created a genuine dispute of material fact that Public Defendants are liable for negligent supervision. Plaintiff concedes that there were no known complaints or deficiencies that would have put Public Defendants on notice that SHP's medical personnel working at DCDC and SCDC were providing inadequate medical care to inmates housed at those facilities. (See Pl.'s Resp. (Doc. 138) at

- 31 -

18-19.) Under the elements of a negligent supervision claim,
Plaintiff is required to present evidence that, "prior to the
act, [Public Defendants] knew or had reason to know of [SHP
medical personnel's] incompetency." Hogan v. Forsyth Country
Club Co., 79 N.C. App. 483, 495, 340 S.E.2d 116, 124 (1986); see
also Medlin, 327 N.C. at 591, 398 S.E.2d at 462 (holding that a
plaintiff must demonstrate "either actual notice to the master
of such unfitness or bad habits, or constructive notice, by
showing that the master could have known the facts had he used
ordinary care in oversight and supervision"). By conceding that
Public Defendants did not have notice of SHP personnel's
incompetence, Plaintiff has not "come forward with specific
facts showing that there is a genuine issue for trial." McLean,
332 F.3d at 718-19 (internal citations omitted).

Moreover, this court finds Plaintiff's argument that the
"hundreds of civil actions for malpractice and negligent medical
care which have been filed against SHP throughout its operating
areas constitutes sufficient notice to the Public Defendants,"
(Pl.'s Resp. (Doc. 138) at 19), unconvincing, as Plaintiff
offers no evidence that these claims exist or that Public
Defendants were aware of them. (See id. at 18-19.) Unsupported
allegations may not form the basis of a court's considerations
at summary judgment. Celotex Corp., 477 U.S. at 323-24 ("One of

- 32 -

the principal purposes of the summary judgment rule is to isolate and dispose of factually unsupported claims . . . .").

Because Plaintiff has not presented evidence that Public Defendants knew or should have known that SHP personnel at SCDC or DCDC were negligent prior to Plaintiff's incarceration, this court finds that the evidence presented is "so one-sided" that Public Defendants "must prevail as a matter of law." Anderson, 477 U.S. at 252. Accordingly, this court will grant Public Defendants' Motion for Summary Judgment as to Plaintiff's negligent supervision claim.

### d. **False Imprisonment**

Public Defendants move for summary judgment as to Plaintiff's claim of False Imprisonment. (Pub. Defs.' Br. (Doc. 126) at 19-20.) Plaintiff "concedes that the facts in this instance are not sufficiently strong to advocate" that Plaintiff's medical treatment "constitutes false imprisonment." (Pl.'s Resp. (Doc. 138) at 19.) Accordingly, this court will grant Public Defendants' motion regarding Plaintiff's claim of False Imprisonment.

### e. **Intentional Infliction of Emotional Distress**

Public Defendants also move for summary judgment on Plaintiff's claim of Intentional Infliction of Emotional Distress. (Pub. Defs.' Br. (Doc. 126) at 20-21.) Plaintiff

"concedes that in the absence of a diagnosis of mental or emotional condition, this claim cannot be supported." (Pl.'s Resp. (Doc. 138) at 19.) Accordingly, this court will grant Public Defendants' motion as to Plaintiff's claim of Intentional Infliction of Emotional Distress.

### f.    Claim under N.C. Gen. Stat. § 58-76-5

Public Defendants also move for summary judgment as to Plaintiff's claims against the sheriffs' official bonds of Defendants Stokes and Marshall under N.C. Gen. Stat. § 58-76-5. (Pub. Defs.' Br. (Doc. 126) at 24-25.) The statute provides plaintiffs with a statutory cause of action against sheriffs, in addition to a common law cause of action. N.C. Gen. Stat. § 58-76-5.

Public Defendants argue that, to raise a claim against a sheriff's official bond, Plaintiff must be able to prove every element of an underlying common law tort claim. (Pub. Defs.' Br. (Doc. 126) at 24-25.) Public Defendants argue that Plaintiff's state common law tort claims all fail as a matter of law, and thus, there is not an underlying state law claim which can serve as the basis for Plaintiff's claim under N.C. Gen. Stat. § 58-76-5. (Id. at 25.)

Plaintiff argues that the evidence on the record establishes Public Defendants' negligence, namely that Plaintiff

- 34 -

failed to receive at least two doses of coumadin while housed at DCDC, and three doses of coumadin while housed at SCDC. (Pl.'s Resp. (Doc. 138) at 21.) Plaintiff argues that because Public Defendants "do not deny that Gunter required daily doses of coumadin because of his serious medical condition," and that Plaintiff's "expert witnesses establish that the failure to provide coumadin . . . caused the severe medical injuries that [Plaintiff] suffered shortly after his release," that Plaintiff has stated a claim for negligence. (Id. at 21-22.)

North Carolina courts have interpreted N.C. Gen. Stat. § 58-76-5 to create a statutory right of action, in addition to a common law cause of action, against a sheriff who either "intentionally engaged in misconduct and misbehavior while performing his custodial duties" or who "acted negligently in the performance of those duties, despite his duty to do otherwise." Stafford v. Barker, 129 N.C. App. 576, 585, 502 S.E.2d 1, 6 (1998). To prevail, a plaintiff must prove every element of a common law negligence claim, as well as every element of the claim brought under N.C. Gen. Stat. § 58-76-5. Id.; Sellers v. Rodriguez, 149 N.C. App 619, 624, 561 S.E.2d 336, 339-40 (2002) (holding that the statute "only gives [the plaintiff] a right of action; it does not relieve [the plaintiff] of the burden of proving that defendants either

intentionally engaged in neglect, misconduct or misbehavior while performing their custodial duties"). Where a plaintiff's underlying common law claim is dismissed for failure to assert that defendants acted negligently in the performance of their duties, a plaintiff's claim under N.C. Gen. Stat. § 58-76-5 should also be dismissed. Sellers, 149 N.C. App. at 625, 561 S.E.2d at 340 (granting defendant's motion for summary judgment on these grounds); Stafford, 129 N.C. App. at 585, 502 S.E.2d at 6 (same).

This court finds that Plaintiff has not asserted a common law negligence claim that could support Plaintiff's claim under N.C. Gen. Stat. § 58-76-5. Plaintiff's Second Amended Complaint does not allege a negligence claim against Public Defendants. (See Second Am. Compl. (Doc. 57).) Plaintiff's state law claims for injury by jailer pursuant to N.C. Gen. Stat. § 162-55 cannot serve as the underlying common law claim, as this court has found that Plaintiff has not created a genuine dispute of material fact as to these claims. See discussion supra Section III.B.2.b. Similarly, although Plaintiff may assert that there is evidence on the record that SHP medical personnel were negligent, (see Pl.'s Resp. (Doc. 138) at 21-22), this court has already found that a reasonable jury could not find on the evidence presented that Public Defendants were negligent in

- 36 -

their supervision of SHP medical personnel, see discussion supra Section III.B.2.c. Accordingly, Plaintiff's negligent supervision claim cannot serve as the underlying cause of action.

Finally, Plaintiff's citation of Myers v. Bryant, 188 N.C. App. 585, 655 S.E.2d 882 (2008) is inapposite and does not raise a common law negligence claim. (Pl.'s Resp. (Doc. 138) at 22.) The allegations against the officers in Myers concerned the officers' decisions to deny medical care to the inmate, 188 N.C. App. at 586, 655 S.E.2d at 884, whereas Plaintiff argues that SHP medical personnel denied medical care to Plaintiff, (Pl's Resp. (Doc. 138) at 21-22), and there is no evidence on the record that Public Defendants had any direct interaction or knowledge of Plaintiff while he was incarcerated in their facilities. (See id. at 4, 21-22; Pub. Defs.' Br. (Doc. 126) at 6.) For this reason, this court does not find Plaintiff's recitation of the evidence against SHP medical personnel to state a common law negligence claim against Public Defendants.

For these reasons, this court will grant Public Defendants' motion for summary judgment as to Plaintiff's claim under N.C. Gen. Stat. § 58-76-5.

### g. Claims under the North Carolina Constitution

Public Defendants also move for summary judgment as to any claims "Plaintiff purports to assert . . . under the North Carolina Constitution," arguing that Plaintiff has adequate remedies at law available. (Pub. Defs.' Br. (Doc. 126) at 25 (footnote omitted).)

Public Defendants argue, (id. n.6), and this court agrees, that, at times, Plaintiff's Second Amended Complaint fails to identify the nature of Plaintiff's claims or to articulate the legal theory upon which they are based. For example, Plaintiff's Fifth Claim for Relief asserts a "Direct Claim Against Sheriffs and Jailers," (Second Am. Compl. (Doc. 57) ¶¶ 153-58), but Plaintiff does not identify whether the basis for that claim is grounded in statute or the North Carolina Constitution. (Id.) Similarly, the text of Plaintiff's Third Claim for Relief is generally titled as "Claims Against Davie County . . . Stokes County," but the body of the claim alleges that Defendants Davie County and Stokes County "refused to perform their oversight and policy-making duties to assure that plaintiff and other prisoners and detainees . . . receive adequate medical care, and have failed and refused to provide medical care to plaintiff and others as directed by . . . the North Carolina Constitution." (Id. ¶¶ 139-45.) Similarly, Plaintiff's Fourth Claim for Relief

- 38 -

is generally titled as "Claims Against Defendant Sheriffs and their Deputies," yet the allegations contained therein assert that the conduct violated the North Carolina Constitution. (Id. ¶¶ 146-52.)

In response, Plaintiff states only that he "recognizes that North Carolina attempts to harmonize its Due Process jurisprudence with that of the United States Due Process jurisprudence" and that "[t]his issue is for preservation only." (Pl.'s Resp. (Doc. 138) at 23.)

Because this court finds that Public Defendants, as the moving party, have discharged their initial burden of demonstrating "that there is an absence of evidence to support" any claims brought under the North Carolina Constitution, Celotex Corp., 477 U.S. at 325, and Plaintiff has not "come forward with specific facts showing that there is a genuine issue for trial," McLean, 332 F.3d at 718-19, this court will grant summary judgment for Public Defendants as to Plaintiff's purported claims under the North Carolina Constitution.

### h. Governmental and Public Officer's Immunity Defenses

In addition to their arguments as to liability for Plaintiff's state law claims, Public Defendants argue that Plaintiff's official capacity state law tort claims are barred by governmental immunity, (Pub. Defs.' Br. (Doc. 126) at 21-23),

- 39 -

and public officer's immunity, (id. at 23-24). These are affirmative defenses which serve as a complete bar to liability. Lambert v. Town of Sylva, 259 N.C. App. 294, 301, 816 S.E.2d 187, 193 (2018) (discussing governmental immunity); Mabrey v. Smith, 144 N.C. App. 119, 124, 548 S.E.2d 183, 187 (2001) (discussing public officer immunity). Because this court will grant Public Defendants' Motion for Summary Judgment as to all state law claims on other grounds, this court need not consider whether these affirmative defenses apply.

### C. Public Defendants' Motion for Expedited Ruling

Finally, this court considers Public Defendants' Motion for Expedited Ruling or, Alternatively, for Continuance of Trial or Enlargement of Time in which to Complete Final Pretrial Preparations, (Doc. 147), and accompanying brief, (Doc. 148).

Public Defendants filed this motion on August 18, 2020, at which time this matter was set for trial on the October 5, 2020 calendar. (Id. at 2.) In their motion, Public Defendants request that this court rule on their Motion for Summary Judgment on or before September 4, 2020, which was the deadline for the parties to serve and file their pre-trial disclosures, (id. at 1-2), that this court continue the trial, (id. at 2), or that this court issue an order allowing the parties fourteen days from the

- 40 -

date this court issued its ruling on the Motion for Summary Judgment to finalize pretrial preparations. (Id.)

On September 14, 2020, this court entered a text order directing the parties to stand down from trial preparation until further notice due to concerns presented by the ongoing COVID-19 pandemic about whether cases set for jury trial would be reached during the October Master Trial Calendar. (Text Order 09/14/2020.) This court held a status conference on September 22, 2020, in which counsel for the parties were present via telephone and in the courtroom. This court addressed options and considerations for proceeding to trial given the COVID-19 pandemic, and the parties did not object to continuing the trial to the April 2021 Master Calendar, subject to completing summary judgment in 2020. (Minute Entry 09/22/2020.) This matter is now set for trial commencing at least thirty days after April 5, 2021. (Doc. 170 at 1.)

Given the changes to the trial calendar, and this court's finding that Public Defendants' Motion for Summary Judgment will be granted as to all claims, see discussion supra Section III.B., this court finds that the urgent circumstances described in Public Defendants' Motion for Expedited Hearing, (Doc. 147), and brief, (Doc. 148), no longer exist. Accordingly, this court

- 41 -

will deny Public Defendants' Motion for Expedited Hearing as moot.

IV.   **CONCLUSION**

For the reasons set forth above,

**IT IS HEREBY ORDERED** that Public Defendants' Motion for Summary Judgment, (Doc. 125), is **GRANTED** as to all claims.

**IT IS FURTHER ORDERED** that Public Defendants' Motion for Expedited Hearing, (Doc. 147), and Motion to Strike, (Doc. 150), are **DENIED AS MOOT.**

This the 15th day of March, 2021.

_____
United States District Judge

- 42 -