IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

DAVID RAY GUNTER,                )
                                 )
            Plaintiff,           )
                                 )
    v.                           )      1:16CV262
                                 )
SOUTHERN HEALTH PARTNERS, INC.,  )
et al.,                          )
            Defendants.          )


<u>**MEMORANDUM OPINION AND ORDER**</u>

**OSTEEN, JR., District Judge**

    Presently before this court is a Motion to Reconsider filed by Defendant Manuel Maldonado, (Doc. 179), to which Plaintiff has responded, (Doc. 184), and Defendant Maldonado has replied, (Doc. 185). Plaintiff David Ray Gunter has also filed a Motion for Reconsideration, (Doc. 181), to which Defendants Southern Health Partners, Inc. ("SHP"), Jason Junkins, Sandra Hunt, Fran Jackson, and Manuel Maldonado (collectively, "Medical Defendants") have responded, (Doc. 183), and Plaintiff has replied, (Doc. 186). These motions are ripe for resolution.

    For the reasons stated herein, Defendant Maldonado's motion will be granted in full, and Plaintiff's motion will be granted in part and denied in part. This court will reopen summary judgment to address three narrow issues.

## I.    BACKGROUND

Plaintiff alleges state and federal law claims against Medical Defendants, healthcare providers at jails in Stokes and Davie counties, based on injuries Plaintiff sustained from blood clots shortly after his release from these jails in November 2012. (See Doc. 178 at 6-14.)[1] The instant motions arise out of this court's Memorandum Opinion and Order issued March 23, 2021. ("March 23rd Order" (Doc. 178).) That order granted Medical Defendants' Motion to Strike, (Doc. 142), and granted Medical Defendants' Motion for Summary Judgment, (Doc. 123), as to all claims against Defendants SHP, Junkins, Hunt, and Jackson, (March 23rd Order (Doc. 178) at 75.) The order also granted Medical Defendants' Motion for Summary Judgment as to the claims of medical malpractice, negligent supervision, violations of § 1983, false imprisonment, and intentional infliction of emotional distress against Defendant Maldonado, but denied the motion as to the claim of negligence against Defendant Maldonado. (Id.)

_____

[1] All citations in this Memorandum Opinion and Order to documents filed with the court refer to the page numbers located at the bottom right-hand corner of the documents as they appear on CM/ECF.

- 2 -

## II.  **STANDARD OF REVIEW**

The parties style their motions as arising under Rules
54(b) and 59(e) of the Federal Rules of Civil Procedure. (See
Def. Maldonado's Mem. in Supp. of Mot. to Reconsider
("Maldonado's Br.") (Doc. 180) at 2-3; Pl.'s Mem. in Supp. of
Mot. for Recons. ("Pl.'s Br.") (Doc. 182) at 1.)

Although the Fourth Circuit has not specifically
articulated the standard for evaluating a motion for
reconsideration under Rule 54(b), see Am. Canoe Ass'n v. Murphy
Farms, Inc., 326 F.3d 505, 514-15 (4th Cir. 2003), district
courts in the Fourth Circuit routinely look to the standards
governing the reconsideration of final judgments under Rule
59(e) for guidance in considering a motion for reconsideration
of an interlocutory order under Rule 54(b). See Volumetrics Med.
Imaging, LLC v. Toshiba Am. Med. Sys. Inc., No. 1:05CV955, 2011
WL 6934696, at *2 (M.D.N.C. Dec. 30, 2011); Hinton v. Henderson,
No. 3:10cv505, 2011 WL 2142799, at *1 (W.D.N.C. May 31, 2011);
Pender v. Bank of Am. Corp., No. 3:05-CV-238-MU, 2011 WL 62115,
at *1 (W.D.N.C. Jan. 7, 2011); Directv, Inc. v. Hart, 366
F. Supp. 2d 315, 317 (E.D.N.C. 2004).

A motion for reconsideration under Rule 59(e) is granted
only in three circumstances: "(1) to accommodate an intervening
change in controlling law; (2) to account for new evidence not

- 3 -

available at trial; or (3) to correct a clear error of law or prevent manifest injustice." Pac. Ins. Co. v. Am. Nat'l Fire Ins. Co., 148 F.3d 396, 403 (4th Cir. 1993). See also Zinkand v. Brown, 478 F.3d 634, 637 (4th Cir. 2007). Manifest injustice is defined as "an error by the court that is direct, obvious, and observable." Register v. Cameron & Barkley Co., 481 F. Supp. 2d 479, 480 n.1 (D.S.C. 2007) (internal quotations omitted). "Clear error occurs when [a court is] 'left with the definite and firm conviction that a mistake has been committed.'" United States v. Woods, 477 F. App'x 28, 29 (4th Cir. 2012) (citing United States v. Harvey, 532 F.3d 326, 336 (4th Cir. 2008)).

A motion for reconsideration under Rule 59(e) is improper where "it only asks the Court to rethink its prior decision, or presents a better or more compelling argument that the party could have presented in the original briefs on the matter." Hinton, 2011 WL 2142799, at *1 (internal quotations and citation omitted). See also Pac. Ins. Co., 148 F.3d at 403 ("Rule 59(e) motions may not be used, however, to raise arguments which could have been raised prior to the issuance of the judgment, nor may they be used to argue a case under a novel legal theory that the party had the ability to address in the first instance."); Directv, Inc., 366 F. Supp. 2d at 317 (holding that motion to reconsider is not proper to "merely ask[] the court to rethink

- 4 -

what the Court had already thought through — rightly or wrongly") (internal citations and quotations omitted).

"[I]f a party relies on newly discovered evidence . . . , the party must produce a legitimate justification for not presenting the evidence during the earlier proceeding." Pac. Ins. Co., 148 F.3d at 403 (internal quotations omitted). See also Zinkand, 478 F.3d at 637 ("If the court elects to look at additional evidence represented as having been unavailable at the prior hearing, the court must satisfy itself as to the unavailability of the evidence and likewise examine the justification for its omission.").

Courts apply the test from a Rule 59(e) motion when amending an interlocutory order, but the elements are not applied with the same force, Beyond Sys., Inc. v. Kraft Foods, Inc., Civil Action No. PJM-08-409, 2010 WL3059344, at *2 (D. Md. Aug. 4, 2010); Long v. O'Reilly's Auto. Stores, Inc., Civil Action No. 6:12-902-MGL, 2014 WL 2864589, at *2 (D.S.C. June 23, 2014), because "[m]otions for reconsideration of interlocutory orders are not subject to the strict standards applicable to motions for reconsideration of a final judgment," Am. Canoe Ass'n, 326 F.3d at 514; see also Fayetteville Invs. v. Com. Builders, Inc., 936 F.2d 1462, 1472 (4th Cir. 1991) ("[A] review of an interlocutory order under Rule 54 is not subject to the

restrictive standards of motions for reconsideration of final judgments . . . .").

## III. <u>ANALYSIS</u>

### A. <u>Defendants Maldonado's Motion to Reconsider</u>

Defendant Maldonado argues that this court should reconsider denying the motion for summary judgment as to Plaintiff's ordinary negligence claim against Defendant Maldonado because this court's decision "arises from an error of law that would cause manifest injustice to Maldonado because of inconsistency with the Court's proximate causation holdings in the [March 23rd] Order." (Maldonado's Br. (Doc. 180) at 3.)

In its March 23rd Order, this court granted summary judgment to Medical Defendants as to Plaintiff's medical malpractice claims because this court found that Plaintiff's medical experts did not testify with a reasonable degree of medical certainty, as required to establish proximate cause for medical malpractice claims under North Carolina law. (March 23rd Order (Doc. 178) at 41-56.)

Defendant Maldonado argues, in the instant motion, that medical expert testimony is also required under North Carolina law to establish proximate cause for ordinary negligence actions when the alleged injury involves complicated medical questions. (Maldonado's Br. (Doc. 180) at 4-5 (citing <u>Taylor v. Shreeji</u>

- 6 -

Swami, Inc., 820 F. App'x 174, 177 (4th Cir. 2020); Shaver v. United States, 319 F. Supp. 2d 649, 664 (M.D.N.C. 2004); Ward v. Borum Healthcare, LLC, No. COA12-418, 2012 WL 5864382 (N.C. Ct. App. 2012); Gillikin v. Burbage, 263 N.C. 317, 139 S.E.2d 753 (1965)).) Defendant Maldonado argues that "Plaintiff's failure to establish proximate cause on the medical malpractice claim requires this Court to conclude that Plaintiff likewise failed to establish proximate cause for the negligence claim." (Maldonado's Br. (Doc. 180) at 4.)

Plaintiff appears to concede that medical expert testimony is necessary to establish proximate cause in some ordinary negligence claims, (Pl.'s Resp. to Def. Maldonado's Mot. for Recons. ("Pl.'s Resp.") (Doc. 184) at 1), and instead, argues that this court was incorrect in finding that Plaintiff's medical experts did not forecast evidence of proximate cause, (id. at 2-10).

This court finds that Defendant Maldonado had every opportunity at summary judgment to present authorities for the proposition that medical expert testimony is required to establish proximate cause for certain ordinary negligence claims under North Carolina law. Not only did Defendant Maldonado not present these authorities to this court at summary judgment, (see Docs. 124, 144), but also, this court did not even reach

- 7 -

this issue because Defendant Maldonado had "not met [his] initial burden of demonstrating 'that there is an absence of evidence to support [Plaintiff's] case,'" as to the element of breach of duty for Plaintiff's ordinary negligence claim. (March 23rd Order (Doc. 178) at 64 (citing Celotex Corp. v. Catrett, 477 U.S. 317, 325 (1986)).) As this court found in its March 23rd Order, Defendant Maldonado offered only brief arguments with regard to Plaintiff's ordinary negligence claim. "In [his] opening brief, [Defendant Maldonado's] only arguments regarding negligence are that 'Plaintiff's negligence claim is actually a claim for medical malpractice,' and thus, should be dismissed." (Id. at 63 (citing (Doc. 124) at 22).) Similarly, in Defendant Maldonado's reply brief, even after Plaintiff had offered evidence in support of his argument that Defendant Maldonado breached a duty related to continuity of care, (Doc. 137 at 6, 19-20), Defendant Maldonado did "not provide any argument as to why Defendant Maldonado is not liable for the alleged negligence," (March 23rd Order (Doc. 178) at 63 (citing (Doc. 144) at 9-10)).

A motion for reconsideration may not ordinarily be used "to argue a case under a novel legal theory that the party had the ability to address in the first instance." Pac. Ins. Co., 148 F.3d at 403. Defendant did not raise this argument in his

summary judgment briefs, (see Docs. 124, 144), nor has he presented any reason why this argument could not have been raised, (see Maldonado's Br. (Doc. 180); Doc. 185). For this reason, under a Rule 59(e) analysis, this court would be compelled to deny Defendant Maldonado's motion. Pac. Ins. Co., 148 F.3d at 403.

Nevertheless, this court cannot ignore that, if correct, Defendant Maldonado's arguments might cause this court to reverse its findings from the March 23rd Order regarding Plaintiff's ordinary negligence claim and enter complete summary judgment as to all claims, eliminating the need for a trial.

"[D]istrict courts have the inherent authority to manage their dockets and courtrooms with a view toward the efficient and expedient resolution of cases," Dietz v. Bouldin, 579 U.S. ____, ____, 136 S. Ct. 1885, 1892 (2016), and "a district court retains the power to reconsider and modify its interlocutory judgments, including partial summary judgments, at any time prior to final judgment when such is warranted," Am. Canoe Ass'n, 326 F.3d at 514-15; see also Dietz, 136 S. Ct. at 1892-93 ("[A] district court ordinarily has the power to modify or rescind its orders at any point prior to final judgment in a civil case."); Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp., 460 U.S. 1, 12 (1983) ("[E]very order short of a final

- 9 -

decree is subject to reopening at the discretion of the district judge."); Fed. R. Civ. P. 54(b) (district court can revise partial final judgment order absent certification of finality). For this reason, although this court uses the test from Rule 59(e) motions as a guide, Rule 54(b) motions are not subject to the same "heightened standards for reconsideration." Am. Canoe Ass'n, 326 F.3d at 514.

Thus, although this court might deny Defendant Maldonado's motion for reconsideration if this court's March 23rd Order was a final judgment, see Pac. Ins. Co., 148 F.3d at 403, under a lessened standard for reconsideration appropriate for interlocutory orders, this court finds that reconsideration is appropriate in order to ensure "judicial economy," and to promote "[t]he ultimate responsibility of the federal courts, at all levels," namely, "to reach the correct judgment under law." Am. Canoe Ass'n, 326 F.3d at 515. Accordingly, this court finds that reconsideration is appropriate pursuant to Rule 54(b) and will reopen summary judgment for the parties to address the issue of proximate causation under Plaintiff's ordinary negligence claim.

**B.   Plaintiff's Motion for Reconsideration**

### 1.   Ms. Banas' Testimony

Plaintiff asks this court to reconsider its findings regarding the testimony of one of the medical experts, Nurse Tammy Banas. (Pl.'s Br. (Doc. 182) at 1-6.) Plaintiff argues that reconsideration is necessary to avoid a "manifest injustice." (Pl.'s Reply to the Medical Defs.' Resp. in Opp'n to Pl.'s Mot. for Recons. ("Pl.'s Reply") (Doc. 186) at 2.)

#### a.   Testimony Regarding Defendant Hunt

In its March 23rd Order, this court found that Ms. Banas did not express an opinion as to whether Defendant Hunt had breached the standard of care:

> Ms. Banas, when asked as to whether she had an opinion as to whether Defendant Hunt breached the standard of care, answered, "No." (Banas Dep. (Doc. 171) at 110.) Although Ms. Banas expressed, referring to Defendant Hunt's conduct, that "it's unfortunate for the patient" that someone could be "in a jail on a Friday and not have a nurse available until a Monday," Ms. Banas ultimately agreed with counsel that Defendant Hunt "handled that the way it should be handled." (Id.)

(March 23rd Order (Doc. 178) at 31.)

Plaintiff argues that, following her deposition, Ms. Banas offered an opinion that Defendant Hunt breached the standard of care. (Pl.'s Br. (Doc. 182) at 5-6.) In support of Plaintiff's arguments, Plaintiff seeks to introduce Banas' expert report,

- 11 -

(Doc. 182-1), which was not included in Plaintiff's Response to Medical Defendants' Motion for Summary Judgment, (see Pl.'s Reply (Doc. 186) at 1). Plaintiff argues that Medical Defendants' counsel "misrepresented to Nurse Banas that no intake of any kind was done on Friday and that 'SHP did not have a nurse available until Monday,'" (Pl.'s Br. (Doc. 182) at 5 (quoting (Doc. 171) at 109-10), and that these misrepresentations caused "Nurse Banas to testify that 'under the circumstances, [Nurse Hunt] handled that the way it should be handled,'" (id. (quoting (Doc. 171) at 109-10)). Plaintiff argues that Medical Defendants withheld a fax from Plaintiff during discovery "that provided concrete evidence that SHP's healthcare providers had been made aware that Mr. Gunter had a valid prescription for Coumadin at the time he was first placed into custody," (id. at 5-6), and as a result, "Nurse Banas' criticisms at the time of her deposition were limited," (id. at 5).

This court finds that Plaintiff should have anticipated at summary judgment that Medical Defendants were challenging Ms. Banas' testimony. Medical Defendants explicitly argued in their summary judgment brief, filed July 6, 2020, that Ms. Banas did not testify that Defendant Hunt breached the standard of care, stating "[a]s shown in the deposition testimony, none of

- 12 -

Plaintiff's experts opined that nurse Hunt . . . breached the standard of care." (Doc. 124 at 13.) Medical Defendants also specifically cited Ms. Banas' deposition testimony, summarizing her as stating that "Nurse Hunt did not breach the standard of care." (Id.) If Plaintiff believed that a misrepresentation had occurred and that Ms. Banas had actually stated in her report, dated April 17, 2019, (Doc. 182-1 at 2), that Hunt breached the standard of care,[2] Plaintiff should have submitted this expert report as an exhibit to his response brief at summary judgment when he filed it on July 30, 2020. (Doc. 137.) Local Rule 56.1 is clear: a party responding to summary judgment must set out "the specific, authenticated facts existing in the record or set forth in accompanying affidavits that would be sufficient to support a jury finding . . . ." LR 56.1(e); see also Fed R. Civ. P. 56(c)(1)(A). Plaintiff has not offered a reason why this report was not submitted at summary judgment. (See Pl.'s Br. (Doc. 182); Pl.'s Reply (Doc. 186).)

Moreover, even if Plaintiff had submitted Ms. Banas' expert report, this court does not find that it would have changed this

---

[2] This court notes that Ms. Banas did not name Defendant Hunt in the expert report, instead stating generally that "[i]n my professional opinion, to a reasonable degree of medical certainty, the care provided to Mr. Gunter was a breach in the standard of care applicable to a Licensed nurse." (Doc. 182-1 at 2.)

court's findings in the March 23rd Order. The Fourth Circuit has held that "[a] genuine issue of material fact is not created where the only issue of fact is to determine which of the two conflicting versions of the plaintiff's testimony is correct." Barwick v. Celotex Corp., 736 F.2d 946, 960 (4th Cir. 1984); see also Williams v. Genex Servs., LLC, 809 F.3d 103, 110 (4th Cir. 2015) ("It is well-settled that a plaintiff may not avoid summary judgment by submitting contradictory evidence."); In re Family Dollar FLSA Litig., 637 F.3d 508, 513 (4th Cir. 2011) (holding that where a plaintiff's deposition testimony and later affidavit were "inconsistent," the court would "disregard her affidavit and rely on the testimony she gave in her deposition"). "If a party who has been examined at length on deposition could raise an issue of fact simply by submitting an affidavit contradicting his own prior testimony, this would greatly diminish the utility of summary judgment as a procedure for screening out sham issues of fact." Barwick, 736 F.2d at 960 (internal quotations omitted). For this reason, this court finds that Plaintiff's expert report[3] may not be used to contradict her deposition testimony and to create a genuine dispute of material

---

[3] This court notes that the expert report is not sworn testimony, (see Doc. 182-1 at 3), falling short of the reliability standards that would be present in an affidavit.

fact as to whether a medical expert testified that Defendant Hunt breached the standard of care.

Accordingly, this court will deny Plaintiff's motion to reconsider Ms. Banas' testimony regarding Defendant Hunt is improper and unnecessary.

### b. Ms. Banas' Standard of Care Testimony

Plaintiff further argues that this court should have accepted Ms. Banas' testimony as to the standard of care at the jails. (Pl.'s Reply (Doc. 186) at 1-3.) In its March 23rd Order, this court found that although Ms. Banas "opined whether Defendant Jackson breached the standard of care owed to Plaintiff," (March 23rd Order (Doc. 178) at 34), Plaintiff had not "provided evidence that Ms. Banas [was] sufficiently familiar with the standard of care in correctional nursing for pre-trial detainees in North Carolina jails such that she could testify to any possible breach . . . , in accordance with North Carolina Rule of Evidence 702 and N.C. Gen. Stat. § 90-21.12," (id. at 38).

Plaintiff argues that this court misapplied North Carolina law in concluding that "there is a different standard for nursing in a North Carolina detention center than there is for other North Carolina healthcare institutions," (Pl.'s Br. (Doc. 182) at 2), citing authorities not previously cited in

- 15 -

Plaintiff's summary judgment response, (see Doc. 137). Plaintiff seeks to introduce Ms. Banas' expert report, (Doc. 182-1), excerpts from the deposition of Defendant Hunt, (Doc. 182-2), and new authorities, (Pl.'s Br. (Doc. 182) at 1-4), to argue that there is not a different standard of nursing in a North Carolina detention center than in other North Carolina healthcare settings and that Ms. Banas is qualified to testify as to a breach by Defendant Jackson, (id. at 2-4).

Plaintiff argues that he did not submit this evidence at summary judgment because "[w]hile the Medical Defendants' memorandum did make quick mention of the fact that Nurse Banas has never worked in a detention center setting, they never once asserted that she was unqualified and should not be permitted to testify." (Id. at 2-3.) Plaintiff further argues that Medical Defendants did not challenge Ms. Banas' qualifications "because the standard of care issues that are [] pertinent to this case are not dependent upon the specific setting," analogizing the legal issues in the instant matter to those in Diggs v. Novant Health, Inc., 177 N.C. App. 290, 296, 628 S.E.2d 851, 856 (2006). (Pl.'s Br. (Doc. 182) at 3.)

Medical Defendants do not explicitly contest Plaintiff's assertions that Medical Defendants did not raise this issue in their summary judgment motion. (See Med. Defs.' Resp. in Opp'n

- 16 -

to Pl.'s Mot. for Recon. ("Med. Defs.' Resp.") (Doc. 183) at 10-11.) Instead, Medical Defendants argue that this court correctly found that Ms. Banas' deposition testimony did not demonstrate that she was familiar with the standard of care for correctional nursing. (Id. at 11.)

As this court found in its March 23rd Order, (Doc. 178 at 26-27), and neither party materially disputes, (see Pl.'s Br. (Doc. 182); Med. Defs.' Resp. (Doc. 183)), under Rule 702(d) of the North Carolina Rules of Evidence, an expert witness must testify regarding the applicable standard of care. Wood v. United States, 209 F. Supp. 3d 835, 842 (M.D.N.C. 2016); N.C. Gen. Stat. § 8C-1, Rule 702(d). "Although it is not necessary for the witness . . . to have actually practiced in the same community as the defendant, the witness must demonstrate that he is familiar with the standard of care in the community where the injury occurred, or the standard of care in similar communities." Billings v. Rosenstein, 174 N.C. App. 191, 194, 619 S.E.2d 922, 924 (2005) (internal citations omitted) (emphasis added). The North Carolina Court of Appeals has clarified that the "community standard allows for consideration of the effect that variations in facilities, equipment, funding, etc., throughout the state might have on the standard of care," Tucker v. Meis, 127 N.C. App. 197, 199, 487 S.E.2d 827, 829

- 17 -

(1997), and that "the concept of an applicable standard of care encompasses more than mere physician skill and training; rather, it also involves the physical and financial environment of a particular medical community," Henry v. Se. OB-GYN Assocs., P.A., 145 N.C. App. 208, 211, 550 S.E.2d 245, 247 (2001). If an expert does not establish that they are familiar with the applicable standard of care, their testimony is inadmissible. Tucker, 127 N.C. App. at 199, 487 S.E.2d at 829.

This court has doubts about Plaintiff's arguments that "Plaintiff had no reason to suspect that there would be any challenge to Nurse Banas's ability to testify." (Pl.'s Reply (Doc. 186) at 2.) As Plaintiff concedes, "North Carolina does recognize that the way healthcare is practiced can differ from one community to another and that an expert must have familiarity with the way it is conducted in a particular region . . . ." (Id.) North Carolina law is also explicit that an expert must "demonstrate[] specific familiarity with and express[] unequivocal opinions regarding the standard of care." Crocker v. Roethling, 363 N.C. 140, 146, 675 S.E.2d 625, 630 (2009). Moreover, although Medical Defendants did not explicitly challenge Ms. Banas' qualifications to testify as to the standard of care in a jail, Medical Defendants did offer a citation to Lewis v. North Carolina Department of Public Safety,

- 18 -

No. 1:15-cv-284-FDW, 2019 WL 177480, at *2 (W.D.N.C. Jan. 11, 2019), for the proposition that the standard of care must be consistent with community standards at a defendant's prison. (Doc. 124 at 12.) Similarly, Medical Defendants noted that Nurse Ms. Banas had "never worked in a jail or a prison," yet "provided two complaints against nurse Jackson." (Id. at 13.) Given Plaintiff's knowledge of North Carolina law, as well as Medical Defendants' allusions as Ms. Banas' lack of personal experience with jails and prisons, this court struggles to understand how Plaintiff did not anticipate that Ms. Banas' qualifications would be an important issue that this court would need to resolve at summary judgment.

The burden at summary judgment is upon Plaintiff, in responding, is to "file with the Court a response that sets out . . . authenticated facts existing in the record or set forth in accompanying affidavits that would be sufficient to support a jury finding . . . ." LR 56.1(e) (emphasis added). Even if Fed. R. Civ. P. 56(c)(2) requires an objection before a court can find evidence irrelevant, Fed. R. Civ. P. 56(c)(4) requires an affidavit opposing a motion for summary judgment "set out facts that would be admissible in evidence . . . ." "[D]istrict courts may enter summary judgment sua sponte 'so long as the losing party was on notice that she had to come forward with all of her

- 19 -

evidence.'" <u>Penley v. McDowell Cnty. Bd. of Educ.</u>, 876 F.3d 646, 661 (4th Cir. 2017) (citing <u>Celotex</u>, 477 U.S. at 326).

Here, Medical Defendants moved for summary judgment on all claims against them. (<u>See</u> Doc. 124.) One of the claims against Medical Defendants was for medical malpractice, for which expert testimony with experience in a similar community is essential to proving the element of breach of the standard of care. <u>See</u> N.C. Gen. Stat. § 8C-1, Rule 702(d). Plaintiff was on notice that Medical Defendants contended that Plaintiff's evidence "failed to establish a breach of the applicable standard of care." (Doc. 124 at 12.) Accordingly, this court finds that Plaintiff was on notice "to come forward with all . . . evidence" relevant to his medical malpractice claim, <u>see</u> <u>Celotex</u>, 477 U.S. at 326; <u>see also</u> <u>Penley</u>, 876 F.3d at 661 (finding adequate notice where defendant moved for summary judgment on all claims against him); <u>Allstate Ins. Co. v. Fritz</u>, 452 F.3d 316, 323 (4th Cir. 2006) (finding adequate notice where one of two defendants moved for summary judgment on a claim), which includes affidavits, <u>see</u> LR 56.1(e); Fed. R. Civ. P. 56(c)(4).

Nevertheless, Medical Defendants do not contest Plaintiff's justification that the issue was not raised in summary judgment briefing. (<u>See</u> Med. Defs.' Resp. (Doc. 183) at 10-12.) Because the standards for reconsideration of interlocutory orders are

- 20 -

less strict than those applicable to motions for reconsideration of a final judgment, <u>Am. Canoe Ass'n</u>, 326 F.3d at 514, this court finds that Plaintiff has presented an adequate justification for this court to reconsider whether there is a different standard for correctional nursing in jails, compared to other medical settings, (<u>see</u> Pl.'s Br. (Doc. 182) at 1-6; Pl.'s Reply (Doc. 186) at 1-3). For these reasons, this court will reopen summary judgment to permit the parties to address the issue of whether Ms. Banas was qualified to testify regarding Defendant Jackson's possible breach of the standard of care.[4]

### 2. <u>Testimony Regarding Proximate Causation</u>

Second, Plaintiff asks this court to reconsider its findings that Plaintiff's proximate cause experts, Dr. Virginia Yoder and Dr. Damian Laber, did not testify with a reasonable degree of medical certainty that Medical Defendants' conduct was not the proximate cause of Plaintiff's injuries. (Pl.'s Br. (Doc. 182) at 6-13.)

---

[4] This court will not permit Plaintiff to address why Ms. Banas would be qualified to testify as to whether Defendant Hunt breached the standard of care, as Plaintiff has not met his burden in showing that Banas offered an opinion regarding Defendant Hunt's possible breach. <u>See</u> discussion <u>supra</u> Part III.B.1.

Under North Carolina law, "expert opinion testimony is required to establish proximate causation of the injury in medical malpractice actions," Cousart v. Charlotte-Mecklenburg Hosp. Auth., 209 N.C. App. 299, 303, 704 S.E.2d 540, 543 (2011); see also Taylor, 820 F. App'x at 178. For a medical expert's causation testimony to reach a jury, there must be evidence on the record that establishes "(1) the likelihood that defendant's conduct caused plaintiff's injury (which must be more probable than not), and (2) whether the expert expressed this 'more likely than not' opinion to a reasonable degree of medical certainty." Riggins v. SSC Yanceyville Operating Co., 800 F. App'x 151, 156-57 (4th Cir. 2020). Courts look to the "entire substantive evidence of causation" to determine the sufficiency of the expert's opinion. Fitzgerald v. Manning, 679 F.2d 341, 354-56 (4th Cir. 1982).

Plaintiff first argues that "[b]oth Plaintiff's experts . . . expressly offer their opinions to a reasonable degree of certainty," and that this court "discounts Plaintiff's expert opinions, requiring them to establish a baseline INR prior to his incarceration in order to opine regarding the Medical Defendants' neglect." (Pl.'s Br. (Doc. 182) at 9.) Plaintiff further argues that, "[i]n doing so the Court expressly rejects Plaintiff's testimony that he was getting INR checks and

- 22 -

warfarin prescriptions from a different physician in the months prior to his incarceration and that he habitually took warfarin every day until he was confined." (Id. at 10.) Plaintiff argues that the Davie County jail's intake records show that "as of November 8, 2012 Plaintiff had a valid prescription for warfarin 7mg daily." (Id. (citing (Doc. 137) at 4).) Finally, Plaintiff argues that, "by requiring Plaintiff's experts to provide opinions as to Plaintiff's INR levels prior to his incarceration," this court has improperly placed the burden of "proving and assessing Plaintiff's alleged noncompliance," on Plaintiff, when it is Medical Defendants who bear the burden of proving the affirmative defense of contributory negligence. (Id. at 11.)

This court finds that Plaintiff's arguments regarding whether Dr. Yoder and Dr. Laber offered their opinions to a reasonable degree of certainty primarily rehash arguments and facts that Plaintiff raised at summary judgment. (Compare Pl.'s Br. (Doc. 182) at 6-13, and Pl.'s Reply (Doc. 186) at 4-5, with (Doc. 137) at 12-14.) Similarly, Plaintiff's arguments regarding the differences between the affirmative defense of contributory negligence and proximate causation were also raised at summary judgment. (Compare Pl.'s Br. (Doc. 182) at 11, with (Doc. 137) at 13-16.) A motion for reconsideration may not be used to

rehash arguments previously made in motions or supporting memoranda. See, e.g., Mascone v. Am. Physical Soc'y, Inc., Civil Case No. RWT 07-966, 2009 WL 3156538, at *3 (D. Md. Sept. 25, 2009) ("[A] motion for reconsideration is not a proper vehicle for an entreaty for the Court to change its mind . . . by rehashing the arguments made in the motions, supporting memoranda, and oral arguments before the Court at the summary judgment hearing."); Consulting Eng'rs, Inc. v. Geometric Software Works LLC, No. 1:06cv956 (JCC), 2007 WL 2021901, at *2 (E.D. Va. July 6, 2007) ("A party's mere disagreement with the court's ruling does not warrant a Rule 59(e) motion, and such motion should not be used to 'rehash' arguments previously presented or to submit evidence which should have been previously submitted."); see also Directv, Inc., 366 F. Supp. 2d at 317 (holding that motion to reconsider is not proper to "merely ask[] the court to rethink what the Court had already thought through — rightly or wrongly") (internal citations and quotations omitted). Accordingly, these arguments may not serve as a basis for reconsideration.

The only unique aspect of Plaintiff's arguments is his allegation that, after the close of discovery, Medical Defendants produced a document that allegedly shows that Plaintiff had a valid prescription for a critical medication at

the time that he entered the Davie County jail. (Pl.'s Reply
(Doc. 186) at 4-5.) Plaintiff has attached that document as an
exhibit to Plaintiff's reply, (Doc. 186-1). Plaintiff asks this
court to reconsider Dr. Yoder and Dr. Laber's testimony because
it was "based upon factual representations that have later
proven to be false," and "a manifest injustice would result" if
this court rewarded Medical Defendants for not having produced
the record in a timely manner. (Pl.'s Reply (Doc. 186) at 5.)

This court finds that argument somewhat misleading.
Plaintiff should have anticipated before the filing of the
Surreply that the document would be relevant evidence of
proximate causation. In their opening brief in support of their
motion for summary judgment, Medical Defendants explicitly
argued that "Plaintiff did not have a valid prescription for two
months before incarceration, and from May 2012 until
incarceration, he did not have a provider treating him for
Coumadin therapy and he did not have an INR test." (Doc. 124 at
16.) Yet, Plaintiff did not mention the existence of this
document or its late discovery in his response, filed on
July 30, 2020, (see Doc. 137), one week after Plaintiff is
alleged to have learned of the document's existence, (Pl.'s
Reply (Doc. 186) at 4). Plaintiff also did not request an

- 25 -

extension of time in which to respond to Medical Defendants'

motion for summary judgment.[5]

Instead, as this court noted in its March 23rd Order,

Plaintiff relied on his deposition testimony to establish that a

physician checked his INR levels and prescribed him medication,

which this court found did not establish the dosage of Coumadin

---

[5] Plaintiff notes in his Reply that he originally attached the medication information to his Surreply as part of the summary judgment briefing, and the Surreply was not accepted. (Pl.'s Reply (Doc. 186) at 4 n.1 (citing Doc. 149-3).) The point of this comment by Plaintiff is not clear.

The exhibit at issue was attached to a Surreply offered in response to a summary judgment motion filed by a different set of defendants – the municipalities and public officials who operated the jails where Plaintiff was confined ("Public Defendants"). (See Doc. 149.) Plaintiff offered the medication record in support of his arguments regarding municipal liability, for the proposition that "Maldonado prescribed a lower dosage than the prescribed amount." (Id. at 4.)

Yet, the document was not supported by an affidavit; it offered no source for the information contained in the document, nor did it explain where the prescriptions came from or when they were last filled. (See id.) Furthermore, the Surreply was filed in response to the Public Defendants' motion for summary judgment. (See id. at 1 ("Surreply Brief to Public Defendants' Motion for Summary Judgment").) That motion for summary judgment was separate from, and involved different issues, (see Docs. 125, 126), from those at issue as a result of Medical Defendants' summary judgment motion, (see Docs. 123, 124).

If Plaintiff, through his footnote as described herein, (Pl.'s Reply (Doc. 186) at 4 n.1), is suggesting the document was part of the summary judgment record as to Medical Defendants, Plaintiff's suggestion is a gross distortion of Local Rule 56.1. It is not this court's responsibility to comb the record and identify relevant facts; it is Plaintiff's responsibility to set out "the specific, authenticated facts . . . sufficient to support a jury finding . . . ." LR 56.1(e).

- 26 -

he was taking or whether he was taking medication properly prior to his incarceration. (March 23rd Order (Doc. 178) at 47-48.) It is beyond this court's comprehension to understand why Plaintiff would not have presented these prescription records if it was relevant to contest a material fact.

Here, Plaintiff asks this court to consider a filing that Plaintiff should have presented to this court at summary judgment. A motion for reconsideration is ordinarily improper where "it only asks the Court to rethink its prior decision, or presents a better or more compelling argument that the party could have presented in the original briefs on the matter." Hinton, 2011 WL 2142799, at *1 (internal quotations and citation omitted). Despite this court's concerns, however, this court will grant Plaintiff's motion as to its finding that Dr. Yoder and Dr. Laber did not hold their opinions to a reasonable degree of certainty. This court finds that reconsideration is appropriate not only because the standards for reconsideration of interlocutory orders are less strict than those applicable to motions for reconsideration of a final judgment, Am. Canoe Ass'n, 326 F.3d at 514, but also because this court will reopen summary judgment as to evidence of proximate causation for the claim of ordinary negligence, see discussion supra Part III.A., and the evidence and arguments for that claim will likely be

- 27 -

similar to those that the parties would raise for proximate causation under a medical malpractice claim. In the interest of "judicial economy," and "reach[ing] the correct judgment under law," Am. Canoe Ass'n, 326 F.3d at 515, this court will exercise its discretion to reopen summary judgment for the parties to address whether Dr. Yoder and Dr. Laber held their opinions to a reasonable degree of medical certainty.

### 3. Plaintiff's Negligent Supervision Claim

Third, Plaintiff asks this court to reconsider its finding that Defendant SHP is not liable for the acts or omissions of Defendant Maldonado, an independent contractor. (Pl.'s Br. (Doc. 182) at 13-14.) In its March 23rd Order, this court granted summary judgment as to Plaintiff's negligent supervision claim against Defendant SHP for Defendant Maldonado's conduct because, under North Carolina law, an employer is generally not liable for the negligent acts of an independent contractor. (March 23rd Order (Doc. 178) at 68-69.) This court also found that N.C. Gen. Stat. § 153A-225(a) did not create a nondelegable duty on Defendant SHP to provide medical care to inmates. (Id.)

In his motion, Plaintiff first argues that Defendant SHP is liable for negligent supervision on the grounds that Defendant SHP has a nondelegable "duty in tort to Plaintiff created by the

contracts it has entered into to provide medical care to inmates if the jails in question . . . ." (Pl.'s Br. (Doc. 182) at 13.)

Second, Plaintiff argues, without citation, that "there are exceptions to the general rule that an employer is not liable for the acts of independent contractors such as where employer retains the right to control the way the contractor performs his work." (Id. at 14.) Plaintiff argues that because there is evidence that Defendant SHP "retained the right to control and supervise Maldonado's conduct," this court should find that there is an exception to the rule that employers are not liable for the acts of independent contractors and that Defendant SHP is liable for Defendant Maldonado's conduct.

Third, Plaintiff argues that North Carolina courts have recognized a public safety exception to the general rule that employers are not liable for independent contractors' negligence, and that "SHP should not be permitted to escape liability for its physician assistant's negligence in providing care to Plaintiff." (Id. (citing Medley v. N.C. Dep't of Corr., 330 N.C. 837, 412 S.E.2d 654 (1992); State v. Wilson, 183 N.C. App. 100, 643 S.E.2d 620 (2007)).)

This court finds that reconsideration is not proper.

First, to the extent that Plaintiff argues that he is an intended third-party beneficiary of the contract between

- 29 -

Defendants SHP and Maldonado and that this creates an independent legal duty in tort, this court finds that is a new argument that Plaintiff did not raise at summary judgment. (See Doc. 137.) Because Plaintiff has not offered a justification for why it was not raised previously, (see Pl.'s Br. (Doc. 182)), reconsideration is improper, Hinton, 2011 WL 2142799, at *1.

Moreover, even if Plaintiff had raised this argument at summary judgment, the North Carolina Supreme Court has consistently held that "[a]n omission to perform a contract obligation is never a tort, . . . unless that omission is also the omission of a legal duty." Council v. Dickerson's, Inc., 233 N.C. 472, 475, 64 S.E.2d 551, 553 (1951) (striking a plaintiff's claim in which the plaintiff alleged a duty in tort arising out of breach of contract between a defendant highway contractor and the state highway commission); see also Toone v. Adams, 262 N.C. 403, 407, 137 S.E.2d 132, 135 (1964) ("A failure to perform a contractual obligation is never a tort unless such nonperformance is also the omission of a legal duty."). In Council, for example, the North Carolina Supreme Court ordered a plaintiff's claim arising out of a breach of contract between a defendant highway contractor and the state highway commission be struck, as the contract between the two parties did not create a duty to plaintiff. Council, 233 N.C. at 475-76, 64 S.E.2d at

- 30 -

553-54. Accordingly, this court finds that an independent contractor agreement between Defendant Maldonado and Defendant SHP does not, as a matter of law, create an independent tort duty owed to Plaintiff.

Second, this court finds that Plaintiff's arguments that Defendant SHP retained the right to control Defendant Maldonado are also a new argument not raised at summary judgment, (see Doc. 137), and thus, improper for reconsideration without adequate justification. Pac. Ins. Co., 148 F.3d at 403. Even if this court were to consider the excerpt from Defendant Maldonado's deposition which Plaintiff seeks to introduce, (Pl.'s Br. (Doc. 182) at 14 (citing Doc. 182-3 at 2-11)), Plaintiff has not offered this court legal authority for the proposition that employers may be liable for the acts of independent contractors where the employer retains the right to control the contractor's work. (See id.) In the absence of legal authorities to support that proposition, this court does not have a basis for reconsideration.

Third, this court finds that Plaintiff's arguments regarding a public safety exception to the general rule regarding liability for independent contractors is merely an attempt to rehash what Plaintiff already argued at summary judgment. (Compare Pl.'s Br. (Doc. 182) at 14, with (Doc. 137)

- 31 -

at 21.) It is not proper on motions for reconsideration to "merely ask[] the court to rethink what the Court had already thought through — rightly or wrongly." <u>Directv, Inc.</u>, 366 F. Supp. 2d at 317 (internal citations and quotations omitted). This court considered and rejected these arguments in its March 23rd Order, (Doc. 178 at 68-69), and this court declines to reconsider them.

Accordingly, this court will deny Plaintiff's motion regarding Plaintiff's negligent supervision claim.

**C.  <u>Issues to be Addressed at Summary Judgment</u>**

For the reasons stated herein, this court will grant Defendant's motion in full, and Plaintiff's motion in part, to reconsider three issues:

First, with regard to Plaintiff's medical malpractice claim, this court will reopen summary judgment to consider whether there is a genuine dispute of material fact that Defendant Jackson[6] breached the standard of care. In particular, the parties' briefs should address whether there is a different standard of care for nursing in a jail, as compared to another

---

[6] Summary judgment will be limited to whether Defendant Jackson breached the standard of care, as Plaintiff has not met his burden in showing that Banas offered an opinion regarding Defendant Hunt's possible breach. <u>See</u> discussion <u>supra</u> Part III.B.1.

healthcare setting in North Carolina, and whether Ms. Banas is a qualified expert who may testify as to whether Defendant Jackson breached that standard of care.

Second, with regard to Plaintiff's medical malpractice claim, this court will reopen summary judgment to consider whether there is a genuine dispute of material fact that missed medication at the Stokes and Davie County jails was the proximate cause of Plaintiff's injuries. In particular, the parties should address Plaintiff's new evidence regarding Plaintiff's prescription medication prior to his detention and what effect, if any, this evidence should have on the court's assessment of whether Dr. Yoder and Dr. Laber testified with a reasonable degree of medical certainty.

Third, with regard to Plaintiff's ordinary negligence claim, this court will reopen summary judgment to consider whether the intra-system transfer of Plaintiff from the Davie County Detention Center to the Stokes County Detention Center proximately caused Plaintiff's injuries. In particular, the parties should address the legal standard for proximate causation in ordinary negligence claims that involve complex medical questions.

The parties should present any legal arguments and evidence relevant to the three issues outlined above. The parties may not address any other legal issues.

As Medical Defendants were the original movants for summary judgment, (Doc. 123), and thus, bear the initial burden of demonstrating "that there is an absence of evidence to support [the plaintiff's] case," Celotex Corp., 477 U.S. at 325, this court finds that the following briefing schedule is appropriate: Medical Defendants must file a brief addressing the three issues indicated herein within ten (10) days of the entry of this Order that shall not exceed 3,000 words; Plaintiff may file a response within ten (10) days of the filing of the Medical Defendants' opening brief that shall not exceed 3,000 words; Defendants may file a reply within seven (7) days of the filing of Plaintiff's response that shall not exceed 1,500 words. All pleadings shall otherwise be in accordance with Local Rule 7.3(d). This court hereby advises both parties that briefs are submitted to the court and reviewed within the context of the Federal Rules of Civil Procedure and the Rules of Practice and Procedure of the United States District Court for the Middle District of North Carolina. Those rules require, inter alia, a concise statement of the facts and a statement of the questions presented,

LR 7.2(a)(2) and (3); LR 56.1(e), with citation to particular parts of materials in the record, Fed. R. Civ. P. 56(c)(1)(A).

This court finds the briefing procedure appropriate in light of the extensive briefing the parties have already provided at summary judgment. This court finds that the trial, which is currently scheduled to begin July 6, 2021, (Doc. 28), should be postponed pending further order of the court and the settlement conference continued.

IV. **CONCLUSION**

For the reasons set forth above, this court finds that Defendant Maldonado's Motion to Reconsider, (Doc. 179), will be granted, and Plaintiff's Motion for Reconsideration, (Doc. 181), will be granted in part and denied in part.

**IT IS THEREFORE ORDERED** that Defendant Manuel Maldonado's Motion to Reconsider, (Doc. 179), is **GRANTED.**

**IT IS FURTHER ORDERED** that Plaintiff's Motion for Reconsideration, (Doc. 181), is **GRANTED** as to Plaintiff's arguments that Ms. Banas testified that Defendant Jackson breached the standard of care and that the testimony of Dr. Yoder and Dr. Laber forecast evidence of proximate causation.

**IT IS FURTHER ORDERED** that Plaintiff's Motion for Reconsideration, (Doc. 181), is **DENIED** as to Plaintiff's

arguments that Ms. Banas testified that Defendant Hunt breached the standard of care and that Defendant SHP is liable in tort to Plaintiff for the acts and/or omissions of Defendant Maldonado.

**IT IS FURTHER ORDERED** that this court will reopen summary judgment to address the issues indicated herein, and the parties will submit pleadings in accordance with the briefing schedule established by this court in this order.

**IT IS FURTHER ORDERED** that the trial scheduled to begin July 6, 2021, should be postponed, pending further order of the court.

This the 10th day of June, 2021.

_____
United States District Judge